negligence of the persons employed by it in the execution of the contract which it has undertaken towards the passenger. Palmeri v. Railway Co., 133 N. Y. 261, 265, 266, 30 N. E. 1001, 16 L. R. A. 136, 28 Am. St. Rep. 632, and authorities there cited; Steamboat Co. v. Brockett, 121 U. S. 637, 645, 7 Sup. Ct. 1039, 30 L. Ed. 1049. Under the well-established rule of liability the defendant cannot maintain that the present action is for a private assault. It undertook to protect its passengers, and, the plaintiff having become a passenger, he has a right to look to the defendant for any damages which he may have suffered, and the assault of the individual becomes merely a part of the negligence of the defendant in the discharge of its duty to the plaintiff.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.

---

(64 App. Div. 598.)

### GRAVES v. CITY OF OLEAN.

(Supreme Court, Appellate Division. Fourth Department. October Term, 1901.)

MUNICIPAL CORPORATIONS—DEFECTIVE SEWERS.

　　A city built a system of sewers under a plan recommended by competent engineers. The contents of a sewer were forced through the pipes in the water-closets of a hotel connecting with the sewer. *Held*, that the city was not liable to the lessee of the hotel on the ground that the sewer was not large enough, where the overflow occurred at a time of unusually high water, and ceased when the closets were removed from the cellar to the first floor.

Appeal from judgment on report of referee.

Action by Mary M. Graves against the city of Olean. From a judgment for defendant on report of a referee, plaintiff appeals. Affirmed.

The following is the opinion of W. G. LAIDLAW, Referee:

This is an action at law brought by the plaintiff to recover damages against the city of Olean in consequence of the contents of a sewer constructed by the city escaping into her cellar, by which she sustained damages. There is little or no dispute about the facts. The plaintiff is the lessee of a hotel called the "Grand Central." It is a brick building, three stories high, besides a cellar or basement. Union street is the principal street of the city, and runs north and south. The hotel is situate on the east side of Union street, with its western side on the eastern line of the street. Before the injuries complained of, the city had built a system of sewers in pursuance of a plan adopted by the city authorities, and approved and recommended by competent engineers. Sullivan street runs at right angles to Union street, and east from Union, and the outlet sewer for this part of the city was laid along Sullivan to the outlet. This outlet sewer along Sullivan was composed of two pipes,—one pipe of fifteen inches in diameter for house connections, and one of fifteen inches in diameter for surface water. The flow of these pipes was east from a point in the west side of Union. There was a house service sewer on the east side of Union, which emptied into the Sullivan street sewer. One part of this Union street sewer had a closed end, which was located nearly opposite the northerly line of the plaintiff's hotel, and the sewer ran parallel to the west side of the hotel, and along the east side of Union to the Sullivan street sewer, a distance of about one hundred feet. This sewer was eight inches in diameter, and its flow south. This is

the sewer of which the plaintiff complains. South of Sullivan street, the Union street sewer is ten inches in diameter, and it flows north till it empties into the Sullivan street sewer at the point where the other portion empties into the Sullivan street sewer, so that the flow of the two sewers must meet at the Sullivan street sewer. The Grand Central Hotel had water-closets in the basement or cellar, which were connected by pipes with the Union street sewer. On the 18th day of June, 1898, and again on the 15th day of October, 1898, the contents of the sewer in some way by the water pressure from the sewer were forced through the pipes connecting the closets with the sewer, and the bottom of the cellar was flooded by the contents of the sewer running into it over the seats of the closets, and a considerable quantity of property of the plaintiff was damaged and destroyed, and the plaintiff was put to expense in cleaning out the cellar. On these two occasions complained of it was a time of unusually high water. Ordinarily there was no trouble from the sewer, but prior to these occasions the contents of the sewer had flowed into the cellar in times of high water, and the city authorities had ample notice that such had been the case. The plaintiff, both in her complaint and in the claim presented to the city for damages, alleges that the sewer with which her closets connected, above described, was not large enough to carry off the water. No other ground of liability was stated.

It is plain enough that the immediate cause of the flooding of the cellar was the water in the sewers, because the trouble only arose in times of high water, and the high water in some way created pressure enough to force the contents of the sewer through the pipes and over the closet seats into the cellar. How the city could remedy the difficulty is not apparent, and no evidence was given that would throw any light on the question of how the difficulty might be avoided in the future. Is the difficulty with the Sullivan street sewer, or with that portion of the Union street sewer south of Sullivan street, or should this portion of the Union street sewer north of Sullivan street have been larger? It is plain that the pressure originated from the connection at Sullivan street, because no surface water could enter the sewer opposite the plaintiff's premises except at that point. It appears that since the commencement of the action the plaintiff has removed the closets from the basement to the floor above, and there is now no difficulty from the sewer.

In Urquhart v. City of Ogdensburg, 91 N. Y. 67, Judge Miller, in writing the opinion of the court, at page 71, 91 N. Y., and page 91, note, 43 Am. Rep., says: "The rule is well settled that where power is conferred on public officers or a municipal corporation to make improvements, such as streets, sewers, etc., and keep them in repair, the duty to make them is quasi judicial or discretionary, involving a determination as to their necessity, requisite capacity, location, etc.; and for a failure to exercise this power, or an erroneous estimate of the public needs, no civil action can be maintained." And see further on the same page the quotation from the opinion of Judge Cooley in a Michigan case. In the case of Mills v. City of Brooklyn, 32 N. Y. 489, it was held that sewer commissioners acted, in constructing sewers, in a quasi judicial capacity, in adopting plans for the construction of sewers, and that the city was not liable in a private action for constructing a sewer too small to fully meet the necessities of the plaintiff's premises. These two cases sufficiently establish the rule as to nonliability of municipalities in the construction of sewers. The difficulty is not in understanding the rule, because that is plain, but in applying the rule to cases as they arise, because there are other rules well established by the highest authority, holding cities liable in private actions for damages, in certain cases, caused by sewers constructed under municipal authority; and still it is evident that these last-mentioned cases do not overrule, either expressly or by inference, the non-liability rule. It will not do to take the general language found in these cases too broadly, because there is danger, if this is done, of putting the case under consideration in the wrong class. The case of Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664, is relied upon by the plaintiff's counsel, but it does not seem to help him. In that case the city of Brooklyn constructed a sewer system covering an area of 2,300 acres of land. They constructed a main sewer, into which all lateral sewers then construct-

ed, as well as those thereafter to be constructed, should empty; and the result was that the district embracing the plaintiff's property was inundated eight or ten times a year, and this state of things continued for eight or ten years, and grew worse as more lateral sewers were constructed and attached to the main sewer. The water in that case overflowed from the manholes, and thus became a case of surface water. The judge puts the decision holding the city liable upon two grounds: (1) The ordinary case of collecting surface water into a large body, and then discharging it upon the lands of the plaintiff; (2) that the city had really taken private property for public use without compensation, it having substantially taken the plaintiff's land by inundating it. In that case the nonliability rule was invoked by the city, and the judge (Ruger, C. J.) is careful not to overrule the nonliability cases, even by implication. He says (page 139, 101 N. Y., page 321, 4 N. E., and page 665, 54 Am. Rep.): "We have, however, been unable to find any case in this state going far enough to sustain the contention of the appellant" (the city). And again (page 140, 101 N. Y., page 322, 4 N. E., and page 666, 54 Am. Rep.), the judge says the facts did not bring the case within the principle of the nonliability cases. And he says: "The immunity of a municipal corporation from liability for damages occasioned to those for whose benefit an improvement is instituted, by reason of the insufficiency of the plan adopted to wholly relieve their wants, or on account of a neglect of the municipality to exercise its power in making desired improvements, and other like circumstances, is quite clearly established by the cases," etc. And the cases, or many of them, including the case of Mills v. City of Brooklyn, supra, are reviewed and distinguished from the case before the court.

It seems that the case in this action comes within the nonliability rule. It is not a case of collecting surface water from a large area into a large body, and then precipitating the flood onto the plaintiff's premises. No surface water went onto plaintiff's premises, in the sense of the adjudicated cases relating to surface water. It was not a case where the sewers were out of repair, as they were in full operation as originally planned and built. There was no fault in the construction. The difficulty. if any, was in the plan and size of the sewer, and this is what the plaintiff says in her complaint. No other grounds of liability are there alleged.

But there is another side to the case. The sewer must have been of great utility to the hotel. It was and is sufficient for all sewerage from the kitchen, laundry, baths, or in fact for anything, including the water-closets, if placed on the first floor. It seems to have answered all the purposes of any sewer, except that water-closets could not be maintained in the cellar in times of high water, for the reason before stated. If there were no sewers at all, the hotel could not have its closets in the cellar. It would seem to be as reasonable that the hotel people should elevate the closets, as that the city should lower its sewer; and whether the city could do that, or not, without changing the entire plan and levels of the sewers, does not appear. The closets and the sewer hold, as to each other, a relative position as to elevation; and the primary cause of the difficulty is as much the lowness of the closets, when in the cellar. as anything relating to the sewer. This is a case where the hotel people do not get all the benefits from the sewer system they expected to, and to which they believed themselves entitled. But this is not a ground of legal liability under the cases above cited, as the city was under no obligation to construct the sewer at all, and, of course, is not liable because the sewer constructed did not accomplish all that might be expected from it, to wit, to furnish drainage for cellar closets. See the above cases and Seifert v. City of Brooklyn, 15 Abb. N. C. 97, and note. The late Judge Brady, in Duryea v. Mayor, etc., 2 Hun, 299, says: "The duty of determining the location and dimensions of sewers is in its nature judicial, and the omission to construct one, or the failure to make it of sufficient size, creates no liability." The counsel for the plaintiff, in an able brief, cites many cases. Many of them relate to cases of surface water collected in large quantities, and then discharged onto the premises of the plaintiffs. These cases, it is believed, are not in point. because they proceed upon the theory of an affirmative act of wrongdoing or a trespass on the part of the municipality, while the complaint in the nonliability cases is that the municipality has

failed in its supposed duty to construct a sewer large enough, or upon a plan, to meet the wants of the plaintiff. This furnishes no just ground of complaint, unless the plaintiff is worse off after the sewer was built than he was before. Counsel has cited other cases. They have all been examined with care, but it is thought that none of them in any degree weakens the rule quoted above from Urquhart v. City of Ogdensburg and from Mills v. City of Brooklyn. The Case of Mills, supra, has been repeatedly cited and restated. See McCarthy v. City of Syracuse, 46 N. Y. 196; Clark v. City of Rochester, 43 Hun, 274.

I have come to the conclusion that the plaintiff must fail in this case. I do not see how any other result could be reached. I think the undisputed facts bring the case squarely within the rule of nonliability in the Mills Case. There are other questions in the case,—the damages, and a question about the presentation of the claim to the city before suit; but, if I am right in the main proposition, their consideration is unnecessary.

There should be judgment for the defendant, dismissing the complaint, upon the merits, with costs.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

M. B. Jewell, for appellant.

Allen J. Hastings, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of the referee.

---

(64 App. Div. 587.)

CITY OF SYRACUSE v. HUBBARD et al.

(Supreme Court, Appellate Division, Fourth Department. October 1, 1901.)

1. CONSTITUTIONAL LAW—CLAIMS AGAINST CITY.
    A city had incurred liabilities in excess of its charter limitations and its appropriations, and was not liable therefor, and the auditing board was prohibited from paying the same. Laws 1901, c. 402, authorized certain designated persons to audit such claims as the city was equitably liable for, which persons were not authorized to interfere with the regular auditing officers of the city. Held, that the statute was constitutional.

2. SAME—LEGISLATIVE POWERS.
    The legislature has power to charge the payment of a deficiency against a city for liabilities incurred in excess of its appropriations and charter limitations, so far as the claims are based on an equitable or a legal ground.

3. SAME—CITY OFFICERS.
    The persons designated by Laws 1901, c. 402, to audit outstanding claims against the city, were not city officers, within the meaning of Const. art. 10, § 2, providing for the election of city officers not provided for by the constitution by the electors of the city, or their appointment by such authorities thereof as the legislature shall designate.

4. SAME—COURTS.
    That persons appointed under Laws 1901, c. 402, to audit claims against the city in excess of its charter limitations, were authorized to take testimony, did not render them a court of inferior jurisdiction, within the meaning of Const. art. 6, § 18.

Appeal from special term, Onondaga county.

Action by the city of Syracuse against Charles Hubbard and others. From an order vacating a temporary injunction, plaintiff appeals. Affirmed.