Aíslen, J.
 

 The amended petition set up the following particulars:
 

 “1. That the said sewer is too small to conduct all sewage from the connected houses.
 

 “2.
 
 That said sewer is improperly constructed in this, that a twelve inch sew,’er is drained
 
 into
 
 an eight inch sewer.
 

 “3. That a right angle connection is made from the twelve inch sewer into the eight inch sewier which impairs the flow of sewage.
 

 
 *317
 
 “4. That roots of trees and shrubbery have been permitted to grow into said sewer and clog it.
 

 “5. That said sewer was improperly constructed and earth has fallen in between the sections.
 

 “6. That said sewer has not sufficient fall.
 

 “7. That said sewter has become partially stopped or plugged and defendant has made no effort to clean same.
 

 “8. That said sewer was improperly designed from an engineering standpoint both as to lack of fall and insufficient capacity, so that it does not carry all the sewerage from the said house and causes the sewerage to back up and flood the basement.”
 

 It will be observed that the specifications set forth in subparagraphs 1, 2, 3, 6, and 8 relate apparently to original construction or to error in plan. Specifications 4, 5, and 7 relate to defective construction, to maintenance, and to operation.
 

 At the trial, testimony was offered only as to the construction of the house, its connection with the Buckeye avenue sewer, the backing up of the sewage, and the damage. There was certain testimony tending to show? that when a 12-inch sewer empties into a 10-inch or 8-inch sewer, this would cause the sewage to back up. The exact situation with reference to the interconnection of the sewers in Willoughby is not shown in the record. There is testimony to the effect that the Buckeye avenue sewler is a 12-inch sewer, and that this 12-inch sewer opens into a 10-inch sewer, which in turn opens into an 8-inch sewer. There is no statement defining the situation of these sewers, their length, their position with reference to each other, nor with reference to the house of the plaintiff, excepting that the plaintiff’s house is situated upon the Buckeye avenue sewer.
 

 
 *318
 
 There is also evidence in the record that the flooding was caused by the overflowing of a subdrain into the sanitary sewer.
 

 Whatever inference this testimony might properly give rise to might well be an inference of inadequacy or insufficiency in size of the sewer, arising from the original plan, or from error in judgment in carrying out that plan, or from development of the territory served by the sewbr. There was no testimony as to clogging of the sewer, as to filling of earth between its sections, as to the growth of roots of trees and shrubs in the sewer, nor as to its partial stoppage. While notice was given to the mayor and other officers of the village as to the flooding of the cellar upon various occasions previous to those alleged in the petition, this notice under the record relates as much, if not more, to the inadequate size of the sewer than to any negligence in operation.
 

 Under these circumstances, at the request of plaintiff and before argument, the court charged:
 

 “If you find that plaintiff’s house was properly connected with the sanitary sewer, evidence of failure of the sewer to drain plaintiff’s property is
 
 prima facie
 
 evidence of defective construction or negligent maintenance.”
 

 This charge constituted reversible error. The fact of the failure of the sewer to drain the plaintiff’s property was equally consistent with the presumption that it arose not from defective construction, nor from negligent maintenance, but from one of several other separate and distinct causes, namely, from inadequate size of the sewer, arising from original plan, or from inadequate, although not defective, construction of the sewer, arising from error in judgment in carrying out the plan.
 

 
 *319
 
 While with reference to negligent maintenance of sewers the general rule was followed by this court in the ease of
 
 City of Portsmouth
 
 v.
 
 Mitchell Manufacturing Co.,
 
 113 Ohio St., 250, 148 N. E., 846, 43 A. L. R., 961, which held that, “When a municipal corporation assumes the control and management of a storm sewer which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to see that such storm sewer is not clogged with refuse, and is liable for negligence in the performance of such duty to a property owner injured thereby, after reasonable notice of the clogged condition, ’ ’ the weight of authority announces a different rule as to liability upon the part of the municipality for damage due to the backing up of sewage arising out of the adoption of a general plan or from defects in such plan due to the mere error of judgment.
 
 Hart
 
 v.
 
 City of Neillsville,
 
 125 Wis., 546, 104 N. W., 699, 1 L. R. A. (N. S.), 952, 4 Ann. Cas., 1089, note, and cases cited;
 
 Garratt
 
 v.
 
 Village of Canandaigua,
 
 135 N. Y., 436, 32 N. E., 142;
 
 Collins
 
 v.
 
 City of Philadelphia,
 
 93 Pa., 272;
 
 Kiesel
 
 v.
 
 Ogden City,
 
 8 Utah, 237, 30 P., 758.
 

 It is also generally held that if the sewier proves insufficient to carry off sewage, there will be no liability on the part of the corporation.
 
 City of Little Rock
 
 v.
 
 Willis,
 
 27 Ark., 572;
 
 Knostman, etc., Furniture Co.
 
 v.
 
 Davenport,
 
 99 Iowa, 589, 68 N. W., 887;
 
 German Theological School
 
 v.
 
 City of Dubuque,
 
 64 Iowa, 736, 17 N. W., 153;
 
 Van Pelt
 
 v.
 
 City of Davenport,
 
 42 Iowa, 308, 20 Am. Rep., 622;
 
 City of Atchison
 
 v.
 
 Challiss,
 
 9 Kan., 603, overruling
 
 City of
 
 
 *320
 

 Leavenworth
 
 v.
 
 Casey,
 
 McCahon (Kan.), 124;
 
 Barling
 
 v.
 
 City of Bangor,
 
 68 Me., 108;
 
 Mills
 
 v.
 
 City of Brooklyn,
 
 32 N. Y., 489;
 
 Graves
 
 v.
 
 City of Olean,
 
 64 App. Div., 598, 72 N. Y. S., 799;
 
 Bear
 
 v. Allen
 
 town,
 
 148 Pa., 80, 23 A., 1062;
 
 Fair
 
 v.
 
 City of Philadelphia,
 
 88 Pa., 309, 32 Am. Rep., 455;
 
 Cooper
 
 v.
 
 Scranton City,
 
 21 Pa. Super. Ct., 17;
 
 Pressman
 
 v.
 
 Borough of Dickson City,
 
 13 Pa. Super. Ct., 236;
 
 Sullivan
 
 v.
 
 City of Pittsburgh,
 
 5 Pa. Super. Ct., 357;
 
 Baxter
 
 v.
 
 Tripp, Treas.,
 
 12 R. I., 310;
 
 Dermont
 
 v.
 
 Mayor of Detroit,
 
 4 Mich., 435;
 
 Springfield
 
 v.
 
 Spence,
 
 39 Ohio St., 665;
 
 Stretton’s Derby Brewery Co.
 
 v.
 
 Mayor of Derby,
 
 (1894), 1 Ch., 431;
 
 Carr
 
 v.
 
 Northern Liberties,
 
 35 Pa., 324, 78 Am. Dec., 342;
 
 Mayor of Americus
 
 v.
 
 Eldridge,
 
 64 Ga., 524, 37 Am. Rep., 89.
 

 There is some conflict in the application of this rule among the courts, but the general doctrine is as above stated. 9 Buling Case Law, 668, and note.
 

 Negligence will not be presumed from the mere fact of injury. Moreover, it will not be presumed that an injury arose from a cause from which a liability arises when the fact of the injury is equally consistent with the presumption that it arose from one of several other separate and distinct causes which do not give rise to a liability.
 

 The judgment of the Court of Appeals will be reversed, and the cause remanded.
 

 Judgment reversed and cause remanded.
 

 Kinkade, Robinson^ Jones and Matthias, JJ., concur.
 

 Marshall, C. J., not participating.