HAASE, APPELLEE, *v.* RYAN, APPELLANT.

(No. 4857—Decided June 20, 1955.)

*Messrs. Shumaker, Loop & Kendrick* and *Mr. Robert B. Gosline,* for appellee.

*Mr. Charles J. Cole,* for appellant.

Fess, J. This is an appeal on questions of law from a judgment in the sum of $20,000 entered on a verdict for plaintiff. Plaintiff, when seven years of age, was injured as a result of a collision with an automobile driven by the defendant in a school zone. With respect to the proximate cause of plaintiff's injury and the liability of the defendant, we find no error prejudicial to the defendant.

There is substantial evidence that as a result of the collision, plaintiff suffered two linear fractures of the skull without displacement, laceration of his left upper jaw extending into the hard palate (diagnosed as a fracture of the left upper jaw), loss of two permanent teeth and baby teeth on the left side of his upper jaw, and a three-centimeter laceration at the left side of his mouth, leaving a permanent scar. There is also credible, but disputed, evidence that he suffered an intracranial hemorrhage. Plaintiff remained in a semicomatose condition for about three days after the accident. At the time of the trial he had effected a complete recovery, according to the testimony of a physician who testified on behalf of defendant, except for the loss of the two permanent teeth and the scar.

During the direct examination of plaintiff's physician the following transpired:

"Q. Referring to the intracranial hemorrhage, what are the probable, or possible permanent results of that? A. There is also a possibility that the clot may form a cyst and produce pressure, or produce scar tissue, and by contracting produce pressure on the brain.

"The Court: You are talking about this particular injury? A. Yes.

"Q. And if such does develop in the future from this particular injury, what result would that have? A. He may have headaches, may have dizziness, may even have a change of personality.

"Mr. Gosline: I believe that's all."

Cross-examination by Mr. Cole:

"Q. Dr. Phillips, I understood you to say on direct examination that you assumed that there was an intracranial hemorrhage? A. Yes.

"Q. You did not say so definitely, though, to the jury? A. No, because in this particular case the only way that we would determine intracranial hemorrhage would be to do a spinal tap.

"Q. That is why you made a spinal tap? A. No, we made no spinal tap, because we felt that in his condition the only thing the spinal tap would do would be just to verify the findings of intracranial hemorrhage which we assumed, and thought it would do more harm than good at the time of the injury; so we didn't do it.

"Q. If you had performed a spinal tap, it would have shown definitely one way or the other? A. That's right.

"Q. I understood you definitely, you are not telling this jury definitely that he had an intracranial hemorrhage? A. That's right.

"Mr. Cole: I move the testimony as to the possibilities be stricken from the record and the jury be instructed to disregard it.

"The Court: Overruled."

During further cross-examination, the physician testified as follows:

"Q. So the answers you gave to Mr. Gosline with reference to possible results of your assumed intracranial hemorrhage, are merely speculation?—you don't want the jury to understand—. A. That's right.

"Q. All right. In this case, having assumed that there was an intracranial hemorrhage, you did assume a scar tissue? A. That's right.

"Q. And you said scar tissue would be permanent and that is still based on assumption, and you don't tell the jury that is true in this case, isn't that right? A. Yes, sir.
" * * *

"Q. Doctor, this seven-year old boy whose fracture you said was flexible, who had no bleeding from the ears or nose, upon whom you did not make a spinal tap to determine definitely, and who was speaking and answering questions the second day, and who returned to school in the fall of 1952 and 1953 and did good work, and who did good work in the school year 1953-1954, and who was very alert and very active as any boy

of his age, you are not telling the jury on those facts that in your opinion there is any permanent injury to this boy's brain, at this time, are you? A. At this time, no, that is right.

"Q. And upon that record of that improvement—A. Yes.

"Q. (Continued)—you are not saying that these other things you mention follow, are likely to follow in view of this history? A. I said it was possible.

"Q. But not in this case? A. Possibly in any case.

"Q. In view of this history? A. Well, I said—yes, I would say that; in any fractured skull it is possible.

"Q. But after a year's time has gone by? A. I would say it is unlikely but still possible.

"Q. You say unlikely? A. Yes, but it is possible.

"Q. But in this case it is unlikely that anything would happen? A. Unlikely."

Defendant's physician testified that the boy had made a complete recovery from his head injury, "and as to the possibility of any future results, I wouldn't feel that he would have." He testified further that any permanent injury to the brain could be definitely determined by an electroencephalogram, which was not performed.

Other than as indicated above, no objection or motion was made to exclude testimony relating to possible aftereffects of the intracranial hemorrhage. The controversy at the trial, as well as in the briefs, is whether intracranial hemorrhage was established by the requisite degree of proof, and it is not particularly directed to the error in admission of testimony relating to possible aftereffects of such hemorrhage.

It is firmly established that a jury is required to determine probabilities and that such determination can not be based upon testimony as to mere possibilities. *Brandt* v. *Mansfield Rapid Transit, Inc.*, 153 Ohio St., 429, 92 N. E. (2d), 1. Where prospective damages from an injury are claimed, they should be limited by the court in its charge to such as may be reasonbly certain to result from the injury. *Pennsylvania Co.* v. *Files*, 65 Ohio St., 403, 62 N. E., 1047. In the instant case, the court properly charged the jury upon the subject of damages in accordance with the rule announced in the *Files case*, but in the

*Brandt case* the court holds that the refusal of the court to exclude speculative testimony constitutes prejudicial error.

The question presented in the instant case is somewhat unique in the following respect: Generally, the principle of probability versus possibility is applied to cause and effect, such as, for example, in Industrial Commission cases where the question is whether the ailment resulted from an injury incurred in employment. *Drew* v. *Industrial Commission,* 136 Ohio St., 499, 26 N. E. (2d), 793; *Drakulich* v. *Industrial Commission,* 137 Ohio St., 82, 27 N. E. (2d), 932; *Pfister* v. *Industrial Commission,* 139 Ohio St., 399, 40 N. E. (2d), 671; *Gerich* v. *Republic Steel Corp.,* 153 Ohio St., 463, 92 N. E. (2d), 393.

In the instant case, the loss of two permanent teeth and the scar afford a predicate for reference to permanent injury in the charge. Since the intracranial hemorrhage was established by credible evidence, it may be argued that a medical expert should be permitted to testify as to possible aftereffects of such an injury. But the rule excluding evidence of possibilities is basic and fundamental and applies to all types of actions wherein cause and effect is involved. *L. S. & M. S. Ry. Co.* v. *Andrews, Admr.,* 58 Ohio St., 426, 51 N. E., 26; *Cleveland, Terminal & Valley Rd. Co.* v. *Marsh,* 63 Ohio St., 236, 58 N. E., 821; *Village of Willoughby* v. *Malone,* 122 Ohio St., 315, 171 N. E., 402; *Gedra* v. *Dallmer Co.,* 153 Ohio St., 258, 91 N. E. (2d), 256; *Boles* v. *Montgomery Ward & Co.,* 153 Ohio St., 381, 92 N. E. (2d), 9; *Landon* v. *Lee Motors, Inc.,* 161 Ohio St., 82, 118 N. E. (2d), 147. In an action to recover damages for personal injury, no recovery can be had for future pain and suffering, except such as the evidence shows are reasonably certain to result from the injury, and evidence that pain or suffering "may" or "might" result is not competent. *Toledo Railways & Light Co.* v. *Poland, Gdn.,* 7 Ohio App., 397. Cf. *Schwarting* v. *Ogram,* 123 Neb., 76, 242 N. W., 273, 81 A. L. R., 769.

It is, therefore, concluded that the court erred in overruling the defendant's motion to strike the physician's testimony as to possibilities. In determining whether improperly admitted and potentially prejudicial evidence prejudices an appellant, or whether substantial justice has been done the appellant as contemplated by Section 2309.59, Revised Code, a re-

viewing court may not weigh the other evidence or determine the credibility and effect of conflicting evidence, unless the weight, credibility and effect of that evidence is substantially in favor of the appellee. *Hallworth* v. *Republic Steel Corp.,* 153 Ohio St., 349, 91 N. E. (2d), 690. In the instant case, there was no evidence of probative value to support a claim of permanent injury to plaintiff's brain. The physician's statement that there was a possibility that the clot might form a cyst producing pressure on the brain, with resultant headaches, dizziness and even a change of personality, was highly prejudicial to the defendant, and may have enhanced the amount of the verdict. Having made his motion to strike such testimony, the defendant did not waive the error by cross-examination of the physician on that point.

During the charge, the court, in referring to undisputed evidence, stated:

"The evidence also disclosed that the defendant was driving a jeep automobile west on Central Avenue, also known as U. S. Route 20, and that the plaintiff, James W. Haase, a minor seven years of age, had started to cross Central Avenue proceeding in a southerly direction, at or near the easterly edge of the paved portion of King Road."

Whether the child was struck near the easterly edge of King Road or at the northwest corner of the intersection was in dispute. It was the contention of the defendant that the child started diagonally in a southeasterly direction into the intersection. In referring to the evidence, the court must exercise the utmost care to avoid giving the jury the view of the court on a particular question of fact. *Heyman* v. *City of Bellevue,* 91 Ohio App., 321, 108 N. E. (2d), 161; *Wuest, a Minor,* v. *B. & O. S. W. Rd. Co.,* 5 C. C. (N. S.), 619, 17 C. D., 365. The *Wuest case* involved a very slight variation from the testimony, but was held prejudicial.

Error is assigned also to the admission of the American Experience Table, disclosing the life expectancy of the child. Mortality tables are most frequently employed in wrongful death cases and to appraise loss of earnings in personal injury cases, but where injuries are shown to be permanent, the majority of jurisdictions consider it proper to admit such tables

in other cases to permit the jury to consider the probable life expectancy of the plaintiff. Such tables are not conclusive, and the jury should be so instructed. 25 Corpus Juris Secundum, 594, Section 81. However, the failure of the court in the instant case to so instruct the jury was an error of omission and was not prejudicial. In any event, the admission of such table can not be held prejudicial to the defendant. Members of a jury are well aware of the vicissitudes and uncertainties of life. They are also aware that "the days of our years are threescore years and ten; and if by reason of strength they be fourscore years, yet is their strength labor and sorrow; for it is soon cut off, and we fly away." The table showed a lesser life expectancy of 50.57 years.

Other errors assigned by appellant either are not welltaken or are nonprejudicial. For error in the admission of evidence and for errors in the charge, the judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

Conn, P. J., and Deeds, J., concur.