J. V. HOLMES, Respondent, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant, No. 42997—257 S. W. (2d) 922.

Division Two, May 11, 1953.

*Warner Fuller* and *Arnot L. Sheppard* for appellant.

1180

*Hullverson & Richardson* for respondent.

1182

BOHLING, C.—J. V. Holmes obtained a judgment of $14,000 against the Terminal Railroad Association of St. Louis, a corporation, under the Federal Employers' Liability Act. Upon this appeal defendant contends plaintiff failed to make a submissible case; that certain instructions given on behalf of plaintiff were erroneous; that improper evidence was admitted, and that plaintiff's counsel was permitted to make prejudicial argument and conduct improper cross-examination of witnesses over defendant's objections.

Plaintiff, who was 26 years of age, was a mail and baggage handler and employed in interstate commerce within the Federal Employers' Liability Act for defendant at Union Station, St. Louis, Missouri.

He sued for injuries sustained in two falls, one occurring in January, 1950, and the other on February 1, 1951.

We understand there are forty-two tracks on defendant's passenger platform at the station. Part of plaintiff's work was performed in the "basement," underneath the passenger platform. Elevators are used in transferring the mail to and from trains at the passenger platform level and the basement, one elevator serving two tracks. There was testimony that steam escaping from pipes maintained on the passenger platform to keep hot water in the passenger cars and water discharged

from engines "dripped" or "seeped" down into the basement; and that the basement floor, described as "black top," was generally wet and moist at all times and ice formed thereon in cold weather.

Defendant used 4-wheel trucks, equipped with tongues, to move mail and baggage at the station. At times forty to fifty mail sacks are loaded on a truck, the load weighing as much as 3,000 pounds. The trucks are moved by tractor or by hand.

Plaintiff worked at night, being on duty from 11 p.m. to 9:30 a.m. One night in January, 1950, plaintiff did not recall the exact date, he was using a tractor and was instructed to move a truck load of post office material. Plaintiff, following instructions, moved the truck to track No. 41, but was not able to put it in line with the tractor. After placing it the best he could by pulling with the tractor, he uncoupled the truck, moved the tractor out of the way, [924] and attempted to place the truck in line by hand. He first tried to pull the truck but could not. He then turned facing the truck, thinking he might have more power, and when he put all his weight on the pull, both feet slipped out from under him. Plaintiff testified he went down on his tail bone, was jarred, made sick and stunned. After a few minutes, he got up and, using the tractor, pushed the truck, lining it up as good as he could. This was a loaded truck, "stacked high, a foot and a half above the top of the wagon," as heavily loaded as the truck he and two others were handling on February 1, 1951, when he suffered his second injury.

Plaintiff made no report of this accident, stating he wanted to continue working as he needed the money. He treated himself the best he could and tried to stay off his feet as much as possible. About May 30th, after the foreman "got on" him, he reported to the Missouri Pacific hospital and remained there eleven days. Thereafter, he received treatment as an "out-patient" until October 4, 1950. He returned to work October 12, 1950, after being off for about four and a half months.

Plaintiff had not completely recovered when he returned to work but was able to perform his tasks. After his two week days off, Ben Cullen, Glen Roberts and plaintiff, on February 1, 1951, were moving a truck with a "pretty good load" of mail on it, but no heavier than the one plaintiff was handling at the time of his fall in January, 1950. Cullen was at the tongue and Roberts and plaintiff were pushing the truck, taking it to No. 35 elevator for subsequent handling. The temperature was near zero, and most of the space between the elevators at the place in question was covered with ice. There was testimony that this ice was of substantial thickness; that ice had formed in the basement off and on all winter; that this particular ice had been there three or four days; that sawdust was used to keep the mail and parcels placed on the platform from becoming damaged by water; and that sawdust did not prevent one from slipping on the ice. De-

fendant had day and night clean-up men, who were supposed to, among other things, remove the ice or place salt upon it to prevent slipping. The ice involved was covered with sawdust, which had become dirty, and plaintiff testified he did not know the ice was there, "just didn't see it." They were in the act of backing the truck into place, Cullen guiding with the tongue and the other two pulling back, when plaintiff hit the ice, slipped and fell hard, all of a sudden, underneath the truck. The fall seemed to daze plaintiff, and he remained down two or three minutes, until his companions helped him up. The following day Cullen placed salt on the ice, which melted it and took care of the situation.

The testimony was that the fall of February 1, 1951, reactivated and aggravated plaintiff's prior condition; that he was severely injured; that he was in the hospital for several days and also received treatment as an "out-patient"; and that he had not been in a condition to work up to the time of trial.

There was testimony that two men were needed to move a truck with any kind of a load on it and that usually there were two men at the rear of a loaded truck, pushing or pulling as the case might be, with one man guiding the truck and assisting, if he can, in moving it.

Plaintiff predicated a recovery for his injuries in January, 1950, on findings of negligence on the part of defendant in failing to lubricate a heavily loaded truck which was being moved by plaintiff and, if the truck were too heavily loaded to be handled by one employee alone, negligence in failing to furnish plaintiff with additional help to move the truck.

He predicated a recovery for his injuries of February 1, 1951, on the presence of ice where he was required to work and a finding that defendant had not furnished a reasonably safe place to work in failing to remove the ice or placing salt upon it, if such failure constituted negligence.

█ Plaintiff's instruction predicating a verdict for the fall in January, 1950, was, as stated, in the conjunctive. If there be substantial evidence of record supporting one of several charges of negligence submitted in the conjunctive, a defendant may [925] not successfully complain of the submission of plaintiff's case. Corley v. Kroger Gro. & Bak. Co., 355 Mo. 4, 193 S. W. 2d 897, 900[10, 11]; Rinderknecht v. Thompson, 359 Mo. 21, 220 S. W. 2d 69, 74[11]. Consult Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. 2d 91, 93[1-5]; Bean v. St. Louis Pub. Serv. Co., Mo. App., 233 S. W. 2d 782, 785[3, 4].

█ We think plaintiff made a submissible case as to each accident when viewing the evidence in the light most favorable to plaintiff. Take for instance, the charge of negligence with reference to not furnishing sufficient help for moving the truck involved in his fall of January, 1950. Three men were moving the truck at the time plaintiff

was injured on February 1, 1951. It was not as heavily loaded as the truck plaintiff was endeavoring to put in place in January, 1950. When an employee could not secure the help he should have to move a truck, it was the practice to do the best he could with the situation. Two men were needed on a truck "with any kind of a load." Plaintiff had asked for help although he did not ask for it immediately prior to his injury. The jury could infer that the foreman who directed plaintiff to move the truck should have anticipated that plaintiff would need additional help in carrying out the order and failed to exercise ordinary care and was negligent, as plaintiff's instruction required the jury to find, in not furnishing plaintiff with additional help. Neither assumption of the risk nor mere contributory negligence on the part of a plaintiff defeats a recovery under the Federal Employers' Liability Act. Hulsey v. Tower Grove Quarry & Const. Co., 326 Mo. 194, 30 S. W. 2d 1018, 1029[8-11]; Macklin v. Fogel Const. Co., 326 Mo. 38, 31 S. W. 2d 14, 16[1, 2]; Blair v. Baltimore & O. R. Co., 323 U. S. 600, 65 S. Ct. 545, 89 L. Ed. 490; Robak v. Pennsylvania R. Co., 81 F. Supp. 841, affirmed, 178 F. 2d 485; 45 U.S.C.A. §§ 53, 54.

Plaintiff testified on cross-examination: "Q. You don't know whether you slipped that night because there was frost on the floor or not? A. I couldn't say." We do not read this as a concession that frost caused his fall. Taking his testimony as a whole it is to the effect that if frost were on the floor, it might have contributed to his fall, but his fall was also brought about by his inability to move the truck by pulling it in the ordinary manner and thereupon facing the truck and putting all his weight in the pull when both feet slipped out from under him. See Maxie v. Gulf, M. & O. R. Co., 358 Mo. 1100, 219 S. W. 2d 322, 325; Kennedy v. Union El. Co., 358 Mo. 504, 216 S. W. 2d 756, 763; Ford v. Wabash R. Co., 318 Mo. 723, 300 S. W. 769, 773.

Plaintiff's fall of February 1, 1951, was caused by ice on the floor. Defendant's "clean-up" men were supposed to look after situations of this nature. Salt placed on the ice the following day took care of the situation. Defendant here argues that if the ice came from seepage, it is a serious question whether its presence could have been avoided as it would have been forming constantly in freezing weather, and defendant's failure to place salt on the ice was not ipso facto negligence, as defendant's obligation was to exercise due care and defendant was not limited to the use of salt upon pain of being held negligent. We think it was for the jury to say under the facts of record whether defendant was in the exercise of ordinary care in not removing the ice or placing salt upon it that a reasonably safe place to work be available for its employees. Plaintiff made a prima facie case for the jury. Malone v. Gardner, 362 Mo. 569, 242 S. W. 2d 517, 520[1-6]; Higgins v. Terminal R. Ass'n., 362 Mo. 264, 241 S. W. 2d 380, 385[8-10]; Schonlau v. Terminal R. Ass'n., 357 Mo. 1108, 212

S. W. 2d 420, 422[1, 2]; State ex rel. F. W. Woolworth Co. v. Bland, 357 Mo. 339, 208 S. W. 2d 263, affirming, Mo. App., 201 S. W. 2d 416.

█ Defendant also states there is no substantial evidence connecting the injuries sued for with the negligence of defendant. Defendant's complaint is that, as the evidence disclosed plaintiff had sustained injuries on other occasions, he failed to establish [926] with reasonable certainty that the injuries sued for were attributable to the alleged negligence of defendant.

The record discloses that between an undisclosed date in 1949 and the trial in October, 1951, plaintiff had experienced seven accidents. Plaintiff's third and sixth accidents are involved in the instant case. Evidence that plaintiff sustained injuries in some of the other accidents came in during the direct examination of witnesses by plaintiff's counsel. The record is sufficiently clear that the injuries sustained by plaintiff in certain of the other accidents were not within the scope of the damages sought in the instant suit; but this is not so with respect to one or two of the accidents involving, according to the record, injuries similar to the ones in suit. In the circumstances, without detailing the facts, the record should be clarified with respect to the injuries sustained by plaintiff in the other accidents as defendant is liable only for the injuries attributable to its negligence.

█ Defendant says error was committed in permitting Drs. Wilcox and Pernoud, plaintiff's medical witnesses, to base their opinions as to plaintiff's condition, at least in part, upon the history related to them by plaintiff. Plaintiff concedes such would be error, but contends that with respect to the testimony of Dr. Wilcox, although defendant's objection was overruled, the witness did not give inadmissible testimony of this nature, and that there was no objection of this nature interposed to the testimony of Dr. Pernoud.

A physician, in stating his expert opinion on a patient's condition, may testify to what he personally observed and also to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints. However, he may not base his opinion upon or testify to statements of the patient with respect to past physical conditions, circumstances surrounding the injury, or the manner in, which the injury was received. Evans v. Missouri Pac. R. Co., 342 Mo. 420, 116 S. W. 2d 8, 11[6]; Corbett v. Terminal R. Ass'n., 336 Mo. 972, 82 S. W. 2d 97, 102[7-10]; Nagel v. Thompson, 237 Mo. App. 1061, 170 S. W. 2d 416, 423[10, 11]; Zarisky v. Kansas City Pub. Serv. Co., 239 Mo. App. 396, 186 S. W. 2d 854, 856[3]; Phares v. Century El. Co., Mo. App., 131 S. W. 2d 879, 883[4].

█ We have said that where a party has seasonably objected to evidence of a certain character by one witness and his objection is overruled, he is not required or expected to repeat his objection when testimony of the same character by another witness is offered. Schierbaum v. Schemme, 157 Mo. 1, 22, 57 S. W. 526, 532, 80 Am. St. Rep.

604; Knaup v. Western Coal & M. Co., 342 Mo. 210, 114 S. W. 2d 969, 975[10, 11]; State ex rel. Kansas City Pub. Serv. Co. v. Shain, 345 Mo. 543, 134 S. W. 2d 58, 61[8].

[redacted] While Dr. Roland J. Wilcox, a chiropractor on the staff of the Missouri Pacific hospital who treated plaintiff, was on the stand the following occurred: "Q. And if a fellow like that falls straight down on his buttock, or his tail bone, what happens to his tail bone? What, in your opinion, happened in this case? A. Well, from what I can gather of the description of his fall, he came down on his tail bone—

By Mr. Sheppard: I object to that, the diagnosis he made is made partially from the history he received.

By Mr. Hullverson: That is the only way the treating physician can treat him.

By the Court: He may testify."

Later the court overruled defendant's renewal of the objection.

Dr. Wilcox, speaking of the accident of January, 1950, testified, in part: "Well, the tail bone was tender due to a fall" and after stating the results and that great pain would follow, added: "It seemed to be true to me as far as I could ascertain." With respect to the fall on February 1, 1951, the witness stated: "* * he had fallen on his hip * *."

Dr. F. G. Pernoud, a surgeon, was plaintiff's next witness. He first saw plaintiff on May 4, 1951. The doctor testified on [927] direct examination, among other things, that plaintiff had told him about and the witness had a history of the accident in January, 1950, when plaintiff fell pulling a truck, and: "Q. Doctor, from your examination of him, from the history and your examination of him, can you tell us, in your opinion, what he suffered from? A. My opinion is he suffered from a sprain of his lower back and from a contusion of the coccyx, or tail bone."

On cross-examination it was developed that the witness' testimony on direct examination about the injury of January, 1950, was based on plaintiff's statements to him "about what happened;" that the witness was unable to ascribe how much of plaintiff's trouble was attributable to the accidents of 1950 and 1951 except by the history, which the witness stated he had a right to take into consideration; that he relied on the history to reach a conclusion; that by history he meant what plaintiff had told him; that plaintiff had told him about two automobile accidents he had been in, and that he went by what plaintiff told him with respect to being hurt in the accidents.

In the instant case, defendant's objection was timely. The question asked Dr. Wilcox did not call for what plaintiff had said, but when the witness' answer indicated he was basing his testimony on what plaintiff told him occasioned his injury, defendant timely interposed the objection, which was overruled, and thereafter renewed it to have it again overruled. Dr. Pernoud's testimony discloses that it is based

in part on hearsay statements made by plaintiff to him. Incompetent evidence on a material issue is presumed to be prejudicial. State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S. W. 2d 667, 669[1-5]. We cannot say from the record that the statements by plaintiff to his physicians with respect to how he received his injuries in the accidents here involved and the other accidents in which he sustained injuries did not influence their opinions and testimony with respect to the accidents involved in the litigation, and that said testimony did not influence the jury. Nagel v. Thompson and Zarisky v. Kansas City Pub. Serv. Co., supra.

██ In connection with the foregoing we note that excerpts from hospital records reciting, among other things, plaintiff's statements as to how he received his injuries were read, over defendant's objection that they were hearsay, during the direct examination of Dr. Pernoud, and the witness testified that the excerpts substantiated his conclusions. See Gray v. St. Louis-S. F. R. Co., Mo., 254 S. W. 2d 577, 579[1, 2].

Dr. J. A. Lembeck treated plaintiff while in the Missouri Pacific hospital. He reported the diagnosis and plaintiff's condition to the defendant. Plaintiff's counsel, on cross-examination, questioned the propriety of this action. Defendant objected, mainly, because no question of ethics was connected with the lawsuit and the questioning was for the purpose of unfairly influencing the jury. The incompetency of the physician as a witness may be waived by the patient. The witness explained his actions, stating the Board of Managers of the Missouri Pacific hospital, which controls the policies of that institution, had issued a written directive that the doctors should notify the employer of the extent of an employee's injuries when sustained in the performance of his duties. No objection was interposed to the comment made in argument by counsel for plaintiff on the matter. Defendant cites Hungate v. Hudson, 353 Mo. 944, 185 S. W. 2d 646, 650[14, 15]; Wiener v. Mutual Life Ins. Co., 352 Mo. 673, 179 S. W. 2d 39, 41[2, 3]; Better Roofing Materials Co. v. Sztukouski, Mo. App., 183 S. W. 2d 400, 403[6-8]; Hancock v. Blackwell, 139 Mo. 440, 455(4), 41 S. W. 205, 208(4). These cases do not establish prejudicial error under the instant record. The scope of the cross-examination is largely within the discretion of the trial court. See Warner v. Terminal R. Ass'n., 363 Mo. 1082, 257 S. W. (2d) 80; Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S. W. 2d 527, 539[25, 26]; Wild v. Pitcairn, 347 Mo. 915, 149 S. W. 2d 800, 804[6, 7]; Gallagher v. S. Z. Schutte Lumber Co., Mo. App., 273 S. W. 213, 220, 221; De Maire v. Thompson, 359 Mo. 457, 222 S. W. 2d 93; Schide v. Gottschick, 329 Mo. 64, 43 S. W. 2d [928] 777, 782[10]; Bigos v. United Rayon Mill, 301 Mass. 76, 16 N. E. 2d 44, 45[1].

Our rulings hereinbefore that plaintiff made a case as to each of the submitted accidents disposes of attacks against the respective in-

struction on the ground there was no evidence to support the submission.

Defendant makes additional attacks against instruction No. 3, submitting the accident of February 1, 1951. The instruction required the jury to find the submitted facts and, in addition, that the facts so found constituted a failure to exercise ordinary care and was negligence. It was not a peremptory instruction to find for plaintiff.

Plaintiff's petition charged defendant with a duty "to remove said ice or cover the same." The instruction proceeded on the theory negligence could be found in a failure to exercise ordinary care "either to have removed such ice or to have placed salt upon it." Defendant's performance of either of the two submitted alternatives would have defeated a recovery under the instruction. Defendant complains that the instruction restricted defendant to the two stated methods of exercising ordinary care, whereas the evidence established that the ice was covered with sawdust, and also that the .instruction is broader than the pleading. The evidence was that covering the ice with sawdust did not prevent slipping; that covering it with salt took care of the situation, and that the purpose of using sawdust was to prevent packages and mail from becoming wet and damaged. We find no evidence that covering the ice with sawdust constituted adequate protection. In this state of the record we would hesitate to hold that the instruction improperly restricted the defendant in its methods of exercising ordinary care to furnish a reasonably safe place to work, although we are also of the opinion that it would be better to have had the instruction in full harmony with the petition. The facts established of record and the requirements of the instruction distinguish the instant case from defendant's cases, viz.: Sprankle v. Thompson, Mo., 243 S. W. 2d 510, 519[9, 10], and Blackwell v. Union P. R. Co., 331 Mo. 34, 52 S. W. 2d 814, 816[3, 4].

Defendant says the court erred in giving instructions Nos. 4 and 5 to the effect, respectively, that (if plaintiff's injuries were the result of defendant's negligence) plaintiff's contributory negligence, if any, would not defeat a recovery and plaintiff could not be held to have assumed the risk. Defendant cites cases holding instructions on contributory negligence under humanitarian submissions inject a false issue and are erroneous. Silliman v. Munger Laundry Co., 329 Mo. 235, 44 S. W. 2d 159, 163[3-5]; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. 2d 809, 813[5, 6]. Defendant concedes its contention was ruled adversely in Higgins v. Terminal R. Ass'n., 362 Mo. 264, 241 S. W. 2d 380, 387[22]; Kleinlein v. Foskin, 321 Mo. 887, 13 S. W. 2d 648, 655. See also Abernathy v. St. Louis & S. F. R. Co., Mo., 237 S. W. 2d 161, 163[2]; Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S. W. 2d 163, 168[7, 8]; Meierotto v. Thompson, 356 Mo. 32, 201 S. W. 2d 161, 166[5]. The instructions did not treat of controverted issues raised by the pleadings for the determination of the

jury and, as we read the cases, may be considered to be of a cautionary nature, to be given or refused in the sound discretion of the trial court.

During the argument, plaintiff's counsel mentioned that no spinal myelogram had been taken of plaintiff, and that it would show whether he had a disc injury, stating: "There is something wrong there, something is wrong with the man's back * *. If he has a disc injury to his back it is a serious thing, and if that little nerve is pinched in there it will cause suffering—." Defendant's objection on the ground there was no evidence that plaintiff sustained a disc injury was overruled. . There was no substantial evidence of a disc injury. Plaintiff's doctors did not establish such an injury, and the testimony of defendant's doctors was that there was no disc injury. Boatmen's Sav. Bk. v. Overall, 16 Mo. App. 510, 515, 516; Pariso v. Towse, 45 F. 2d 962, 964[6]; Eckenrode v. Pennsylvania R. Co., **[929]** 164 F. 2d 996, 999[6]; Moore v. Chesapeake & O. R. Co., 340 U. S. 573, 576, 71 S. Ct. 428, 95 L. Ed. 547. The objection should have been sustained.

Defendant's objection to the following was also overruled: "It is good judgment, ladies and gentlemen, he [plaintiff] is either an awful crook or he is awful dumb, and I don't have to try lawsuits for crooks or dumb people—." The argument was outside of the record and the objection well taken. Kirkpatrick v. Wells, 319 Mo. 1040, 6 S. W. 2d 591, 594[10]; Fathman v. Tumilty, 34 Mo. App. 236, 241, 242; Smith v. Western U. Tel. Co., 55 Mo. App. 626, 631, 632.

The judgment should be reversed and the cause remanded. It is so ordered. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.