Marlin Dale HAHN, by and through his father and natural guardian, Sylvester Hahn, (Plaintiff) Respondent,

v.

Earnest McDOWELL, (Defendant) Appellant.

No. 30626.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

Dearing, Richeson & Weier, and H. L. C. Weier, Hillsboro, for appellant.

Thurman, Nixon & Blackwell, and Jeremiah Nixon, Hillsboro, for respondent.

ANDERSON, Presiding Judge.

This is an action by Marlin Dale Hahn, as plaintiff, against Earnest McDowell to recover damages sustained by him in an automobile accident. Plaintiff was a passenger in an automobile being operated at the time by defendant McDowell. It was alleged that the accident was due to the negligent operation of the automobile by defendant. There was a verdict and judgment in favor of plaintiff for $7,500. From this judgment defendant has appealed.

The accident occurred on May 20, 1958. On that date, plaintiff, who was a high school student, accompanied defendant on a trip to Teen Town, a place where young people assemble in the evening for dances. This place is located on what is referred to as old Highway 61 and is about a mile south of Festus, Missouri. It was early in the evening and shortly before 7:30 p. m. the parties left Teen Town intending to go to a drive-in theatre at Pevely, Missouri.

Defendant drove the automobile, a 1953 Packard, north on old Highway 61 and attained a speed between sixty and seventy miles per hour according to the testimony of plaintiff. While thus proceeding, plaintiff warned defendant they were approaching a curve in the road, to which plaintiff replied, "Well, we can make any curve tonight." They were about 400 yards from the curve at the time. Defendant did not apply the brakes and the automobile left the road, hit a barricade, turned over several times, and came to rest in a deep ravine. Plaintiff was pinned underneath the automobile with his right thigh in contact with the muffler of the car. As a result he received a deep burn on his right thigh. He also received bruises on his face and arms and a small cut on his left leg. He was taken from the scene of the accident to Jefferson Memorial Hospital, where he stayed that night. He was released the following morning. The bruises and the cut on plaintiff's left leg cleared up in a couple of weeks, but the burn required bandaging for a period of about nine months. Plaintiff suffered considerable pain as a result of the burn. The wound drained during this period of nine months, and gave off a disagreeable odor. A scab then formed and after it came off there was a scar at the site of the wound, oval in shape, which measured about 5½ inches in length and 2½ inches in width. Plaintiff testified at times the scar pains him when he is on his feet a lot, and when there is a temperature change. He also stated the scar would bleed if it was injured in any way. Although plaintiff went out for football during the fall of 1958, he did not stay on the team for the whole season. He stated his doctors advised him not to play football. In the spring of 1959, he went out for track and participated in the four-forty, eight-eighty and mile relays. He went with the track team to a district meet at Cape Girardeau and ran in the eight-eighty relay. He was unable to swim during the summer in which the wound was healing and the scar shows whenever he wears swimming trunks.

Plaintiff started to work at the Twin City Packing & Locker Company immediately upon graduation from High School. He retained this job for about three months, then quit to secure employment at the St. Joseph Lead Company. He stated he had no difficulty working except when he is on his feet a lot, in which event, he has pain. He has pain about once a week.

Appellant complains that the trial court erred in permitting Dr. Victor Scherman and Dr. Francis X. Paletta to testify, over the objection of defendant's counsel, that there was a possibility of cancer developing in the scar area. It is urged that the testimony was not based upon reasonable medical certainty, but amounted to mere speculation.

Dr. Scherman examined plaintiff on March 19, 1960, just a few days before the start of the trial. He stated he found a burn scar on plaintiff's right thigh over the outside upper portion of the thigh bone. It was oval in shape and measured 5½ inches in length and 2½ inches in width. It was somewhat adhered to ligaments and muscles below it, as demonstrated by the fact that the scar moved with the muscle movements. Plaintiff complained to the doctor of sensitivity and irritability of the scar and that it was sensitive to changes of temperature and atmospheric conditions. The doctor further testified that the scar was a typical burn scar from second and third degree burns. There was a ridge running through the scar which the doctor judged to have resulted from a third degree burn. This is what is called a keloid type scar, i. e., a thickened type of overgrowth in the scar tissue. The edges of the scar are thin and somewhat atrophic, and not as healthy as normal skin.

The portion of the testimony to which objection is made appears in the following excerpt as it appears in the transcript.

"Q. Doctor, what in your opinion is the future outlook on a scar of this type?

"Mr. Weier: If the Court, please, I think we are delving into speculation here, the future outlook on a scar of this kind. I want to object to it as calling for speculation.

"The Court: I think you might reframe the question as to his opinion instead of future outlook.

"Q. Do you have an opinion as to the future possibility with a scar of this type?

"Mr. Weier: I want to object to that for the same reason, as to possibility, as calling for speculation.

"The Court: Overruled, go ahead.

"Q. First, it would be my opinion that the boy should be seriously urged

to consider a re-grafting of this area, in other words, an incision of the present scar, that would relieve this keloid formation, and be replaced with another skin graft to make a better and healthier scar?

"Mr. Weier: I want to object for the same reason, if the Court, please.

"The Court: Overruled.

"A. The reason for this advice is the reason of future possibility, this scar, according to the history, has already broken down several times at its edge and sometimes in the center because of irritation, because of stretching, because of injury to the area. This repeated injury and the character of the scar itself, being sensitive and irritable to these various irritations, can *and they do show a greater possibility of developing cancer in the future, in the site of the scar.*" (Emphasis ours.)

Dr. Francis X. Paletta gave the following testimony by way of deposition.

"Q. Now then Doctor, do you have an opinion as to what the future condition of that scar will be?

"Mr. Weier: I want to object to the answer of the doctor here, being pure speculation. He starts out saying there are three possible results from the type of burn scar, then he goes on with a statement of different things that may enter into the thing, but he does not say in his opinion it actually would happen.

"The Court: Overruled.

"A. In my opinion the size of that scar in a young individual of his age there are three possibilities resulting from this type of burn scar. The one is it is not serviceable skin covering for this particular part of the body and is subject to breakdown by trauma. Once this area becomes injured it will be extremely slow in healing be-

cause of the center of the scar tissue. *The second factor is because of his age and if he would lead a normal life there is a percent of formation of cancer of the skin in burn scars.* The third factor is because of its location. Sometimes young individuals develop psychological problems in not wanting to engage in various things because of the cosmetic appearance of such a wide scar. (Emphasis ours.)

"Q. *Now then, Doctor, on the possibility of cancer occurring in a wound and scar of this type, does that occur more often in a scar that results from a burn than, say, a simple cutting scar?* A. *Oh, yes. In other words, these are specific type of cancers that develop particularly in burn scars and not in ordinary scars from other sources of trauma.*

"Q. *And it is your opinion that this scar is one of the type that it could occur in?* (Emphasis ours.)

"Mr. Weier: * * * *I want to object to it further because the answer to the question shows that it is pure speculation.* (Emphasis ours.)

"The Court: Overruled.
"A. *It is possible.* (Emphasis ours.)

"Q. On the thinness of the edges of the scar, Doctor, do you have an opinion as to whether that would make the scar more subject to injury or trauma? A. It doesn't make it more susceptible to injury or trauma but if it is injured it is much slower in healing with this type of scar.

"Q. *Do you have an opinion as to what should be done with this scar to reduce the chance of a cancerous growth?* (Emphasis ours.) A. I have recommended that this entire scar be excised and be replaced by a skin graft."

■ Both expert witnesses were permitted, over the objection of the defend-ant, to testify that there was a possibility of cancer developing in the site of the scar. Neither doctor gave it as his opinion that such development was reasonably certain to result, nor even that it would probably result from the injury. We think the evidence was clearly incompetent and prejudicial. It is undoubtedly true that in an action to recover damages for personal injuries testimony of experts as to the future consequences which are expected to follow the injury are competent, but to authorize such evidence, however, the apprehended consequences must be such as in the ordinary course of nature, are reasonably certain to ensue. It is not enough for the doctor to testify to the possibility of a certain result; his testimony should show that it is reasonably certain to follow the injury. Consequences which are contingent, speculative, or merely possible are not proper to be considered by the jury in ascertaining the damages, for it would be plainly unjust to compel one to pay damages for results that may or may not ensue and which are merely problematical. We are supported in this view by ample authority. See Mahany v. Kansas City R. Co., 286 Mo. 601, 228 S.W. 821; Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328; Clark v. Mississippi River & B. T. Ry. Co., 324 Mo. 406, 28 S.W.2d 174; Pandjiris v. Oliver Cadillac Co., 339 Mo. 711, 98 S.W.2d 969; Boss v. Ill. Cent. R. Co., 221 Ill.App. 504; Toledo Rys. & Light Co. v. Poland, 7 Ohio App. 397; Haase v. Ryan, 100 Ohio App. 285, 136 N.E.2d 406; Lorch v. Eglin, 369 Pa. 314, 85 A.2d 841; Collins v. City of Janesville, 99 Wis. 464, 75 N.W. 88; Lauth v. Chicago Union Traction Co., 244 Ill. 244, 91 N.E. 431; Strohm v. New York L. E. & W. R. Co., 96 N.Y. 305; Turner v. Lovington Coal Mining Co., 156 Ill.App. 60; Rice v. Hill et al., 315 Pa. 166, 172 A. 289. The court erred in admitting the evidence complained of, and for that reason defendant is entitled to a new trial.

We deem it unnecessary to discuss appellant's contention that the court erred in

giving Instruction Number 2. Before another trial, counsel for plaintiff will have an opportunity to re-examine the instruction and make such corrections as may be considered necessary, in view of the attack made upon it. Likewise, since the judgment is to be reversed, it will not be necessary to pass upon the assignment that the verdict of the jury is excessive.

The judgment is reversed and the cause is remanded.

RUDDY and WOLFE, JJ., concur.