Guy HUGHEY, Respondent,

v.

Thomas E. GRAHAM, Appellant.

No. 41147.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 8, 1980.
Motion for Transfer Denied
Sept. 12, 1980.

Application to Transfer Denied
Oct. 15, 1980.

Buerkle, Lowes & Beeson, Albert C. Lowes, Thomas A. Ludwig, Jackson, for appellant.

Schnapp, Graham & Reid, Maurice Graham, Fredericktown, for respondent.

SMITH, Presiding Judge.

Defendant appeals from a judgment for plaintiff in the amount of $10,000 for personal injuries and $1,000 property damage pursuant to a jury verdict in an automobile accident case.

No question is raised about the sufficiency of the evidence to establish defendant's liability for the rear-end collision, and in fact liability was virtually conceded at trial. All of defendant's contentions on appeal relate to damages. The evidence, viewed in the light most favorable to plaintiff, establishes that plaintiff, 74 years old at the time of the accident, sustained a soft tissue injury to his neck and back, aggravation of pre-existing arthritis, an inguinal hernia, and a laceration of his nose in the accident. His medical expenses were $536 and an estimate of $1800 to $2200 more to surgically repair the hernia. There was expert testimony that the neck, back and arthritic condition are permanent. There was evidence, uncontradicted, that plaintiff had suffered a series of injuries over his lifetime. One was an injury to his upper back sustained in a rear-end collision approximately ten years prior to the current accident. Plaintiff's evidence was that this injury had troubled him for approximately three years and then had cleared up and given him no more trouble. Possibly more notable was a compression fracture of his lower back sustained in a fall approximately six months prior to the accident involved in this suit. Plaintiff testified that this condition had also cleared up and that he was trouble free at the time of his latest accident. Defendant contended, and had evidence to support his theory, that plaintiff sustained little or no injury in the accident in suit and that his complaints were attributable to pre-existing conditions.

■ On appeal defendant raises eight contentions, one with three subpoints. Some we need not reach in view of our disposition. Some of the others, which may arise on retrial, we can quickly dispose of. We find the action of the trial court in limiting defendant's opening statement so as to exclude reference to a prior lawsuit to have been within the court's discretion. The court permitted full development of this during the trial and defendant sustained no prejudice in the court's action in precluding reference to this suit until its admissibility had become apparent. Nor do we find any error in the court refusing to permit defense counsel to develop through the medical experts that they "had seen people who, having disposed of their lawsuits for personal injury, no longer felt the compelling need to see their physician." What other people may have done had no relevance to whether Mr. Hughey was malingering.

■ We turn to the remaining issues. Defendant premises error upon the trial court's refusal to permit him to inquire on cross-examination whether plaintiff had in fact paid his medical bills or whether they had been paid by some other source. On direct examination plaintiff had responded affirmatively to the question "have all of these expenses been paid *by you*" (emphasis supplied). Defendant, while acknowledging the collateral source rule (*Kickham v. Carter*, 335 S.W.2d 83 (Mo.1960) [3–5], contends that it was waived in this case and that he was entitled to cross-examine on the matter to establish plaintiff's lack of credibility. The court, in making its ruling, stated that in balancing the rights of the parties it found that the prejudice from injecting the collateral source into the case outweighed the prejudice from restricting defendant's cross-examination. We find no abuse of discretion, nor would we find an abuse had the court permitted the cross-examination. Plaintiff's counsel's question injected an irrelevant fact into evidence—the source of payment of the medical bills. Control of cross-examination is largely within the sound discretion of the trial court. *Orr v. Shell Oil Co.*, 352 Mo. 288, 177 S.W.2d 608 (1943) [25–27]. Its decision here to preclude further examination on this completely collateral matter was not error. Defendant relies upon *Stanziale v. Musick*, 370 S.W.2d 261 (Mo.1963) [7, 8]. There, however, the evidence adduced related not only to plaintiff's credibility but also to

whether the accident in suit was the sole and direct cause of plaintiff's disability. The court held that under the "particular and peculiar circumstances of this case" the evidence of a collateral source was admissible. No such particular and peculiar circumstances exist here. Plaintiff's direct examination did open the door, but while that action may authorize the trial court to allow cross–examination on the subject it does not compel it. We find no error.

■ Defendant next contends that the court erred in three particulars in allowing the video–tape deposition testimony of plaintiff's treating doctor. The first particular is a contention that the trial court permitted testimony of the doctor which constituted his opinion of the truthfulness and veracity of the plaintiff. The testimony challenged concerned the doctor's examination of the plaintiff and his conclusions that plaintiff did have a limitation of motion in his neck. This conclusion was properly within the medical expertise of the doctor and was based upon his examination of plaintiff. That his medical opinion tended to support plaintiff's testimony and thereby lend credence to plaintiff's veracity does not make the testimony inadmissible.

■ The next complaint is that the doctor testified to the estimated cost of the hernia surgery although stating that he did not perform that type surgery. His opinion was based upon his experience with medical procedures and the fact that the matter arose frequently with his patients. It may be conceded that his opinion was based upon hearsay obtained from other doctors, patients, and hospitals with whom he had contact. That does not make his opinion of the reasonable cost of medical services inadmissible. *State ex rel. State Highway Commission of Mo. v. Kimmell*, 435 S.W.2d 354 (Mo.1968) [1–5].

Defendant's final complaint about the doctor's testimony is that the trial court permitted the doctor to recite the plaintiff's past medical history based upon what plaintiff told him. The initial examination by plaintiff's treating physician occurred nine days after the automobile accident. The treating physician had also been plaintiff's regular physician for many years, even predating the first automobile accident. The question objected to concerned whether the doctor had determined at the first examination after the most recent accident whether plaintiff had difficulty with his neck or back immediately before the accident. The response was:

"I do have a statement that I made on my chart back on my initial examination in that the patient stated that he could not bend or stretch his neck without pain *and that he had been working five or six hours daily, doing hard work in his own words, and was not having problems with his back.*

"Q. *Before the wreck?* A. *That is correct."* (Emphasis supplied).

The law of Missouri is stated in *Holmes v. Terminal R.R. Assn. of St. Louis*, 363 Mo. 1178, 257 S.W.2d 922 (Mo.1953) as follows:

"A physician, in stating his expert opinion on a patient's condition, may testify to what he personally observed and also to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints. However, he may not base his opinion upon or *testify to* statements of the patient with respect to past physical conditions, circumstances surrounding the injury, or the manner in which the injury was received." [5] (Emphasis supplied). *See also Schears v. Missouri Pacific Railroad Company*, 355 S.W.2d 314 (Mo.banc 1962) [1] and cases cited therein.

The line between the admissible and the inadmissible is "merely the line which divides the present from the past." *Murphy v. S.S. Kresge Co.*, 239 S.W.2d 573 (Mo.App. 1951) [6].

■ Our reading of the innumerable cases in Missouri on this subject does not reveal an in–depth analysis of the rule stated. It would appear that logically two different approaches should be involved, depending on whether the physician is a treating physician or an examining (testifying) physician. In the former case the recita-

tions of the patient as to present symptoms are an exception to the hearsay rule because those recitations are considered to be essentially reliable. The patient is seeking the aid of the physician in order to achieve an improvement in his physical condition through the skill of the physician. People generally realize that for the physician to bring his skill to bear he must have accurate information on the patient's condition from the patient himself. McCormick, Evidence 2d Ed. (Hornbook Series) Ch. 29, Sec. 292. It would logically follow that if the patient can be presumed truthful in that circumstance (as to his present complaints and symptoms), he can equally reasonably be presumed to be truthful concerning that portion of his past medical history necessary for the physician to correctly diagnose and treat his present condition.[1] There would appear therefore no logical reason to hold that reliability exists as to present symptoms and complaints but fails to exist for past medical or physical history.[2]

 In the case of an examining physician different considerations exist. It may be presumed that what a patient tells a physician who is examining solely for the purposes of testifying at a trial is not inherently reliable. The same incentives for being truthful simply do not exist. This is true whether the statements relate to present symptoms and complaints or past medical history. However, the information given by the patient to the examining physician as to present complaints and symptoms is held admissible, probably not because it is an exception to the hearsay rule, but because it is not hearsay at all. *See* 37 A.L.R.3d 778, *supra*, Sec. 7(b) p. 823. The testimony forms the basis for the expert opinion of the physician. The testimony is therefore not offered for its truthfulness, but rather because it is the information

upon which the doctor bases his opinion. This is demonstrated by our requirement that the doctor must base his medical opinions to the extent it depends on past history, on a hypothetical question positing that history. *Schears v. Missouri Pacific Railroad Company, supra*, [5]. Yet the history set forth in the hypothetical question is not included in the question because it is true, but because it is in evidence and is necessary for the medical opinion. Its truth is to be determined by the jury, not from the hypothetical question, but on the basis of the other evidence offered to establish that history. As to present symptoms related by the patient to the examining doctor no supportive evidence is required. It would appear more logical to allow the examining doctor to testify to what the patient stated his present complaints and symptoms and past medical history are to the degree they form a basis for the doctor's opinion and to advise the jury through a cautionary instruction that the evidence is offered only for that purpose and not for its truthfulness.[3] Obviously independent evidence of those facts must be adduced or the doctor's testimony would be stricken or not received as unsupported by evidence.

 As our law now stands, however, the treating physician may not testify to past history which is inherently reliable and the examining physician may testify to present complaints and symptoms not inherently reliable, and which the jury may consider for the truth of the matters therein contained. Were we free to do so we would hold the testimony challenged here to be admissible as an exception to the hearsay—rule because inherently reliable. We are, however, constrained to follow the long line of cases by our Supreme Court and Court of Appeals.

1. The factual circumstances of the way in which the accident occurred would not generally be necessary for such diagnosis and treatment. The physician need not know which driver ran the stoplight. Our discussion deals only with medical history and not with "circumstances surrounding the injury, or the manner in which the injury was received" which may present different problems.

2. *See* 37 A.L.R.3d 778–Admissibility of Physician's Testimony as to Patient's Statements or Declaration; 6 Wigmore on Evidence 3d Ed. § 1722; Uniform Rules of Evidence, Rule 63.

3. *See* for example MAI–CR 2d 2.36.

The answer objected to here related to the past physical condition of the plaintiff prior to the accident in suit. This physical condition was vigorously contested. It was the thrust of the defense that plaintiff's pre–existing accidents were the cause of his post–accident complaints and that he sustained little or no injury in the present accident. The doctor's testimony was, under our present law, inadmissible hearsay and presumptively prejudicial. It clearly served to bolster the plaintiff's testimony that his prior back injuries had in fact cleared up. We are aware of the line of cases which hold that where the same evidence is already before the jury (as it was here through plaintiff's testimony) the evidence is cumulative and therefore non–prejudicial. For example: *Lesch v. Terminal R.R. Ass'n. of St. Louis*, 258 S.W.2d 686 (Mo.1953) [10–12]; *Coons v. Farrell*, 437 S.W.2d 674 (Mo.App.1969) [1]. But *see Schears v. Missouri Pacific Railroad Co., supra*, [7, 8]. In those cases, however, the court did not rest its decision solely on the cumulative nature of the testimony but also upon additional considerations from which a conclusion of non–prejudice could be made. We do not find such additional considerations here. The only issue really litigated was plaintiff's physical condition before the accident. His credibility and that of other witnesses was sharply attacked by the defense. The evidence objected to was not truly cumulative, it was corroborative. As such it was prejudicial. *Schears v. Missouri Pacific Railroad Company, supra.* Under the law the evidence was erroneously admitted and we cannot find a basis for holding it non–prejudicial.

Defendant's final point is that the trial court erred in giving both MAI 4.01 and 4.02 (including the first paragraph of 16.02). Plaintiff sought, in a single count petition, damages for his personal injury and for property damage. MAI 4.01 is entitled Measure of Damages–Personal and Property. The Committee Comments specifically state that at the instruction conference the parties and the Court should discuss what damages are supported by the evidence and can be argued to the jury. It is contemplated by MAI that the elements and proper measure of damages will be presented to the jury during argument. *Boten v. Brecklein*, 452 S.W.2d 86 (Mo.1970) [9, 10].

MAI 4.02 is entitled Measure of Damages–Property Only. The Notes on Use provide "[t]his instruction should be used in cases involving property damage only." The Committee Comments indicate that the instruction is intended for usage in the "special case of property damage only." Those Comments further provide: "Where *both* personal and property damages are involved 4.01 must still be used." (Emphasis in original). Plaintiff contends that the Notes on Use and Comments do not expressly prohibit the use of both instructions. Such a prohibition is not expressly spelled out, but we think the only reasonable interpretation of the Notes on Use and Comments is that where both personal and property damages are involved 4.01 is the proper instruction to the exclusion of 4.02.[4] Plaintiff relies upon *Kennedy v. Tallent*, 492 S.W.2d 33 (Mo.App.1973) [5] to support his offering of the instruction. In *Kennedy* we did uphold the use of both 4.01 and 4.02 in the same suit. There, however, the action involved multiple counts and multiple parties and only the property damage was recoverable jointly by two of the plaintiffs. We held in that particular circumstance it was not error to utilize 4.02 for the property damage claim and 4.01 for the various personal damages. The case before us does not involve the circumstances found in *Kennedy*: it is rather a straightforward single claim by a single plaintiff against a single defendant.

Nor, in view of the Committee Comments on 4.01 and *Boten v. Brecklein, supra*, was it necessary to use 4.02 to prevent the jury from basing its property dam-

---

4. We will admit we cannot articulate a valid reason why, where property damage is one element of the total damages, 4.02 or some similar definitional instruction should not be given in addition to 4.01 to fully inform the jury on that aspect of damages.

age award upon the cost of repair evidence introduced by the defendant through cross-examination. The proper measure of damages was the difference in fair market before and after the accident. *Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39 (Mo.banc 1976) [5]. This measure of damages could and should have been discussed at the instruction conference and the jury arguments limited to that measure. We conclude that under the mandate of MAI it was error to utilize both 4.01 and 4.02. Because of our disposition, it is unnecessary for us to determine the prejudicial effect of this variation.

Judgment reversed and remanded for new trial on damages only.

SATZ and SIMONS, JJ., concur.