**Bobbie Gene BREEDING,**
**Plaintiff-Respondent,**

v.

**DODSON TRAILER REPAIR, INC.,**
**and Time D.C., Inc.,**
**Defendants-Appellants.**

**No. 65739.**

Supreme Court of Missouri,
En Banc.

Nov. 20, 1984.

Eugene K. Buckley, St. Louis, for Dodson Trailer Repair.

Ralph K. Soebbing, St. Louis, for Time, D.C., Inc.

Donald L. Schlapprizzi, St. Louis, for plaintiff-respondent.

GUNN, Judge.

Plaintiff-respondent Bobbie Gene Breeding obtained a money judgment in an action for damages against defendants-appellants TIME, D.C., Inc. (TIME) and Dodson Trailer Repair, Inc. (Dodson) for personal injuries sustained in a vehicular rear-end collision. The Eastern District of the Missouri Court of Appeals reversed and remanded. The matter is now before this Court as on

original appeal by virtue of our granting plaintiff's motion to transfer. Rule 83.09.[1]

The following points of appeal have been raised by defendants TIME and Dodson: 1) alleged error in the admission of the hospital emergency room record concerning plaintiff's past medical history; 2) alleged error in allowing testimony of a physician regarding the possibility and cost of future surgery; and 3) excessive jury verdict.

Defendant TIME also contends error: 1) by admission of the deposition of plaintiff's physician which was taken prior to TIME's being a party to the lawsuit; and 2) in the giving of an instruction hypothesizing negligence per se on a city brake ordinance violation.

We affirm the judgment of the trial court.

Plaintiff, a self-employed tow truck operator, was towing an automobile when the accident occurred. He had stopped for a signal light at a St. Louis street intersection when he was struck from behind by a truck owned by defendant TIME and driven by an employee of defendant Dodson. The impact caused plaintiff's head and neck to strike the passenger compartment of his truck. His right hand, which had been braced on the steering wheel, was injured.

Plaintiff did not seek immediate medical attention, but two days after the accident he went to a hospital emergency room for treatment, complaining of pain in wrist, arm and back. Following examination and x-rays, plaintiff was released and advised to consult with his own physician if pain persisted. Continued discomfort resulted in plaintiff's seeking further medical treatment by a physician for about a two year period. Six months after the accident he also sought the advice of Dr. William F. Luebbert, an orthopedic surgeon. Dr. Luebbert diagnosed plaintiff's ailment as cervical arthrosis with right brachial ridiculitis. Testifying by depositional means, Dr. Luebbert related that plaintiff's pain and condition would continue indefinitely and if not stabilized through conservative treatment would require surgery. Over defendant Dodson's objection Dr. Luebbert then testified regarding the costs of such surgery.

■ The defendants' first point of alleged error is that Dr. Luebbert's testimony concerning possible surgery and its attendant costs was speculative and, thus, inadmissible. The testimony was as follows:

Q. Do you feel in your medical opinion that Mr. Breeding will be in the need of future treatment?

A. [Dr. Luebbert] I do.

Q. And what form would that take, Doctor? Of what form would that be?

A. I feel that he will need continued conservative treatment as we've given him in the past. I feel that if this is successful that that is all that he will need. If he progresses to the point that the conservative treatment does not control him he will need surgery on his neck.

Immediately thereafter Dr. Luebbert, over objection, was permitted to testify that the cost of any such surgery would be $1,000 to $1,500, with an additional $3,000 to $4,000 for hospital expense and $300 to $400 for the follow-up care.

The plaintiff testified that while not anxious to undergo surgery, he would submit to it if necessary to reduce the hardship of pain.

The gravamen of defendants' complaint is that future surgery and attendant expenses were contingent upon the failure of conservative treatment. Hence, they argue, that surgery was no more than a mere possibility, and under *Hahn v. McDowell,* 349 S.W.2d 479 (Mo.App.1961), such testimony was incompetent as not being a future consequence with "reasonable certainty".

*Hahn,* however, is readily distinguishable from the circumstances of this case. In *Hahn* the medical testimony concerned the

---

**1.** The accident and trial were prior to *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983).

possible development of cancer in an area of a burn scar which had resulted from injuries sustained in an automobile accident. The disfigurement was described as nothing more spectacular than a typical scar from second and third degree burns. The testimony concerning the development of cancer hypothesized on the possibility of a new disability, unrelated to the existing ailment suffered by the plaintiff.

That is not the circumstance of this case. Rather, the situation here is more closely akin to the facts in *Stephens v. Guffey*, 409 S.W.2d 62 (Mo.1966), in which the physician was allowed to present his opinion as to the estimated cost of low back surgery which could be employed to correct a condition from which the plaintiff was thought to have been suffering. The medical expert testified that "although he was thinking in terms of low back or disc surgery he had not yet recommended surgery, and that he would wait awhile yet." 409 S.W.2d at 69–70. Such testimony was held to be admissible.

In this case, Dr. Luebbert's suggestion of surgery appears to be a legitimate medical alternative to the conservative treatment that the plaintiff was receiving. Its admissibility is even more compelling than the testimony referred to in *Stephens v. Guffey*, particularly in light of plaintiff's expressed desire to forestall suggested surgical procedures. It is evident that Dr. Luebbert's testimony does not reach the arena of conjecture and speculation condemned in *Hahn*. Inasmuch as the jury was entitled to consider the possible need for surgery, the estimated cost was also appropriate for its consideration.

Defendants' next contention of error concerns the admission of a portion of a hospital record containing a statement of past history on the cause of plaintiff's injury. The portion of the hospital record about which defendants complain reads:

> ... was involved in a truck accident while driving on the job on 21, April. Was driving towtruck; struck from behind by tractor-trailer. Jammed wrist against steering wheel. Developed immediate pain in wrist and swelling. Low back pain developed by next morning. Pain worse yesterday and today ... than day of accident.

Defendants acknowledge that the hospital record is admissible within the business records exception to the hearsay rule. But, they argue that the specific statement is inadmissible hearsay as being past history since the plaintiff related events that occurred prior to the time he appeared as a patient. Support for defendants' position that recitations of medical history are subject to exclusion is found in *Holmes v. Terminal R.R. Association of St. Louis*, 363 Mo. 1178, 257 S.W.2d 922 (1953). *Holmes* holds that:

> [a] physician, in stating his expert opinion on a patient's condition, may testify to what he personally observed and also to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints. However, he may not base his opinion upon or testify to statements of the patient with respect to past physical conditions, circumstances surrounding the injury, or the manner in which the injury was received.

*Id.* 257 S.W.2d at 926.

■ Although statements of past physical condition are deemed hearsay by *Holmes*, the trial and reviewing courts may give consideration to the prejudicial effect of such hearsay and find that its admission is not prejudicially erroneous. *Hunter v. St. Louis Southwestern Railway Co.*, 315 S.W.2d 689 (Mo.1958); *Annin v. Bi-State Development Agency*, 657 S.W.2d 382 (Mo. App.1983).

The fact that plaintiff related to the doctor that he had been in a collision and struck his wrist against the steering wheel can scarcely be considered prejudicial to defendants' case. After all, there was no controversy that a collision had occurred, and no details of the collision were related in the medical record. *Annin v. Bi-State Development Agency*, 657 S.W.2d at 386. *Further*, it would be only natural for a physician to consider the circumstance of

the accident in arriving at a diagnosis. "Certainly, some inquiry as to the cause of an injury is proper and necessary for intelligent treatment of a patient." *Hook v. St. Louis Public Service Co.,* 296 S.W.2d 123, 128 (Mo.App.1956). Also, the plaintiff already had testified to the items of hearsay. *See Hunter v. St. Louis Southwestern Railway Co.,* 315 S.W.2d at 696.

The foregoing discussion leads to the query as to the need for preservation of a rule restricting inquiry into a patient's past history, particularly as it pertains to diagnostic efforts. It was with some considerable ease that the rule was skirted here by transforming illicit hearsay to licit by reference to two well reasoned cases—*Hunter* and *Annin.*

In this case the plaintiff's declarations were made to hospital personnel and enscribed on hospital records for the purpose of prescribing proper medical treatment for injuries incurred in an accident. As recognized in *Holmes,* statements of present symptoms and conditions are freely admitted. It does, therefore, seem substantially incongruous that a statement by a patient to his doctor that his arm hurts is admissible but reference to how long the injury has prevailed or what accident may have caused the injury is inadmissible hearsay.

A growing number of jurisdictions and distinguished authorities recognize the principle that statements made to a physician, or contained in hospital records, even if characterized as medical history, are admissible insofar as such statements are reasonably pertinent to diagnosis and treatment.[2] And why should that not be the rule?

In *Hughey v. Graham,* 604 S.W.2d 626 (Mo.App.1980), Judge Smith, though constrained to follow the strictures imposed by *Holmes,* neatly indites the flaw of this hearsay rule regarding medical past history and gives just reason for abandoning it:

> People generally realize that for a physician to bring his skill to bear he must have accurate information on the patient's condition from the patient himself. McCormick, Evidence 2d Ed. (Hornbook Series) Ch. 29, Sec. 292. It would logically follow that if the patient can be presumed truthful in that circumstance (as to his present complaints and symptoms), he can equally reasonably be presumed to be truthful concerning that portion of his past medical history necessary for the physician to correctly diagnose and treat his present condition. There would appear therefore no logical reason to hold that reliability exists as to present symptoms and complaints but fails to exist for past medical or physical history.

604 S.W.2d at 630.

■ The hospital record admitted in this case contains no statement which is not reasonably pertinent for proper diagnosis. The facts that an accident occurred and that plaintiff was struck from behind are not in dispute. Therefore, the trial court properly admitted the plaintiff's remarks noted in the hospital record. To the extent that this opinion causes conflict with earlier decisions such as *Holmes,* those cases are overruled.

■ Defendants argue that the verdict of $35,000 was so excessive as to indicate bias and prejudice on the part of the jury. In reviewing the excessive verdict issue, consideration is given only to the evidence which supports the award. *Brotherton v. Burlington Northern Railroad,* 672 S.W.2d 133, 138 (Mo.App.1984).

■ Evidence favorable to the verdict demonstrates that the plaintiff is a 47-year-old, self-employed tow truck operator. Be-

---

**2.** *State v. Garza,* 337 N.W.2d 823, 824 (S.D. 1983); *Howe v. State,* 611 P.2d 16, 20 (Alaska 1980); *State v. Daniels,* 180 Conn. 101, 429 A.2d 813, 816 (1980); *State v. Red Feather,* 205 Neb. 734, 289 N.W.2d 768, 771 (1980); *Booker v. Duke Medical Center,* 297 N.C. 458, 256 S.E.2d 189, 202 (1979); *Bouchie v. Murray,* 376 Mass. 524, 381 N.E.2d 1295, 1298 (1978); *Candella v.* *Subsequent Injury Fund,* 277 Md. 120, 353 A.2d 263, 265 (1976); *People v. Gant,* 58 Ill.2d 178, 317 N.E.2d 564, 569 (1974); *Cody v. S.K.F. Industries, Inc.,* 447 Pa. 558, 291 A.2d 772, 776 (1972); 2 Jones, *Evidence* § 12:12 (6th Ed.1972); McCormick, *Evidence* § 313 (1984); *see also:* Federal Rule of Evidence 803(4); and § 37 A.L. R.3d 778, 802 § 5(a).

cause of his injuries, he has had to curtail his daily activities, reducing his work day to four or five hours. He previously worked "on-call", 24 hours a day. He also has to engage in less strenuous types of jobs. It is apparent, therefore, that the character of the plaintiff's injuries has affected his earning capacity. Additionally, he has suffered several years of debilitating pain in his wrist, back and neck. Expert testimony indicated that his injuries are of a permanent nature, with a prognosis that he will have to undergo continued conservative treatment or surgery.

■ To obtain relief on the basis of an excessive verdict, the defendants must demonstrate that the verdict is glaringly unwarranted so as to shock the conscience of the court. *Fravel v. Burlington Northern Railroad,* 671 S.W.2d 339, 344 (Mo. App.1984). And while not disclaiming authority by appellate courts to take corrective action in the event of abuse of discretion by the trial court in the treatment of verdicts, this Court will defer to the trial court's substantial discretion in attending to the size of jury awards. *Fowler v. Park Corp.,* 673 S.W.2d 749, 758 (Mo. banc 1984). No apparent abuse of discretion exists in this case with regard to the award of damages.

Defendant TIME raises two additional points on its appeal, the first pertaining to the reading of Dr. Luebbert's deposition which was taken prior to TIME's being a party defendant.

■ Generally, a deposition taken prior to the joinder of a party to a case is inadmissible against the absent party, this for the reason that there has been no opportunity to cross-examine the proponent. *First National Bank of St. Petersburg v. Switzer,* 277 S.W.2d 689 (Mo.App.1955); *A.M. Legg Shoe Co. v. Brown Leather Co.,* 249 S.W. 147 (Mo.App.1923); 23 Am.Jur.2d *Depositions and Discovery* § 189 (1983). Exceptions exist, however. For example, a deposition may be properly introduced even though obtained prior to the joinder of one of the parties where its admission causes no prejudice. *A.M. Legg Shoe Co. v.*

*Brown Leather Co.,* 249 S.W. at 148; 23 Am.Jur.2d *Depositions and Discovery, supra.* Unity and identity of interests and issues by a joined and participating party may also cause exception to disqualification of the deposition. *First National Bank of St. Petersburg v. Switzer,* 277 S.W.2d at 692.

■ The circumstances of this case give an additional reason for finding no prejudice to TIME by the admission of Dr. Luebbert's depositional testimony. Defendant TIME does not suggest nor does the record reveal any surprise in the use of Dr. Luebbert's testimony. In answer to TIME's interrogatories, Dr. Luebbert was named as the expert witness upon whose testimony the plaintiff intended to rely. Dr. Luebbert's statement also was made a part of the court file, and TIME's counsel acknowledges that he read the deposition. It also is significant that in the deposition Dr. Luebbert states that due to his surgery schedule and office hours he would be unavailable to testify personally—a clear forewarning that his deposition would be utilized at trial. Further, if any uncertainty existed as to Dr. Luebbert's trial appearance, that ambiguity was dispelled by the plaintiff's opening statement:

> Dr. Luebbert's testimony will be brought to you in this case not in person but through his deposition. Both sides were out at his office and he was sworn to tell the truth. He gave the deposition and his testimony will be read to you.

Despite strong signals and clear advice that plaintiff intended to use Dr. Luebbert's deposition in trial, TIME voiced no objection prior to trial, during opening statement or at trial except at the moment the deposition was introduced in the third day of the proceedings. Thus, in this case, TIME's objection to the reading of the deposition came too late. Motion for suppression of the deposition should have been made when it became apparent that it would be read in Dr. Luebbert's absence or at least when reference was made to it during the opening statement. TIME's in-

action caused an impermissible lulling of plaintiff and the trial court—a situation which cannot be used to the defendant's advantage. *See Empire Dist. Electric Co. v. Johnston,* 241 Mo.App. 759, 268 S.W.2d 78, 80 (1954); *Hutchens v. Wagner,* 274 S.W. 105, 106 (Mo.App.1925).

TIME's contention that objection during the third day of trial was timely is unavailing; it was not. The tocsin of plaintiff's intended use of the deposition was sounded prior to trial and during opening statement. The trial court, justifiably disconcerted over the unexpected turn of events thrust into the case on the third day, properly noted that prompt objection by TIME would have allowed for the deposition to be retaken in an evening hour or that even a continuance could have been granted.

*Mincey v. Blando,* 655 S.W.2d 609 (Mo. App.1983), offers TIME no support. In that case a deposition was rejected after immediate objection was raised at the first opportunity, and no time existed for corrective measures. That is not the circumstance of this case. TIME's complaint came too late to allow the trial court to take some remedial action without undue disruption to the judicial processes.

Finally, TIME argues instructional error regarding inadequacy of its vehicle's brakes.

■ At the time of the accident, defendant Dodson's employee was driving TIME's tractor. The brakes failed, and the tractor struck plaintiff's vehicles. The jury was instructed to render a verdict for plaintiff if it found that TIME provided Dodson with a vehicle that did not have two sets of adequate brakes and which contributed to plaintiff's damages.

Acknowledging that St. Louis city ordinance required it to maintain two sets of adequate brakes for its truck, TIME contends that plaintiff failed to prove: 1) that the brakes were defective prior to the time that the vehicle was bailed to defendant Dodson; and 2) that TIME had knowledge of any defective condition prior to the bailment to Dodson. Both contentions fail.

First, there was circumstantial evidence indicating that the tractor was in disrepair at the time it was delivered to co-defendant Dodson. An employee of Dodson, who inspected the tractor after the accident, stated that the vehicle's service line hook-up had been fastened improperly. The effect of this improper hook-up was that the tractor had been operated with no service brake on the rear axle. The Dodson employee further stated that he did not remember having "anything to do with those lines prior to the accident." A reasonable inference, therefore, is that the lines had been fastened improperly prior to the bailment.

■ Second, the plaintiff submitted his case based on negligence per se, in that the city ordinance on maintaining two sets of adequate brakes had been violated. As stated in *Ruediger v. American Bus Lines, Inc.,* 426 S.W.2d 4 (Mo. banc 1967), knowledge of the defect is not an essential element of negligence where the act or omission involves a violation of a statute or ordinance. "The plaintiff having proved violation of the regulations, it devolved upon defendant to prove legal excuse or avoidance of its failure to observe the duty imposed by the regulations." 426 S.W.2d at 9. TIME offered no reason or legal excuse for failing to maintain its vehicle with two sets of operational brakes. Thus, plaintiff made a submissible case of negligence and the verdict-directing instruction was supported by evidence.

The judgment is affirmed.

RENDLEN, C.J., and BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

WELLIVER, J., concurs in result.

HIGGINS, J., concurs in separate opinion filed.

HIGGINS, Judge, concurring.

I concur with the majority in affirmance of the judgment for plaintiff against defendants. I do so specially, however, to express my opinion that it is neither neces-

sary nor appropriate to tailor an exception to the hearsay rule and overrule *Holmes v. Terminal R.R. Association of St. Louis,* 363 Mo. 1178, 257 S.W.2d 922 (1953), in order to deal with the error charged to admission of the hospital record in this case.

Admission of the record excerpt, if erroneous, was not prejudicial because everything recited in the excerpt had already been established by plaintiff's testimony prior to admission of the record. *Hunter v. St. Louis Southwestern Railway Company,* 315 S.W.2d 689 (Mo.1958); *Harris v. Goggins,* 374 S.W.2d 6 (Mo. banc 1963); *State v. Zagorski,* 632 S.W.2d 475 (Mo. banc 1982).