**Arthur J. BROTHERTON,
Plaintiff-Respondent,**

v.

**BURLINGTON NORTHERN
RAILROAD,
Defendant-Appellant.**

**No. 46721.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 1, 1984.

Don E. Engle, St. Louis, for defendant-appellant.

C. Marshall Friedman, Newton G. McCoy, Friedman, Weitzman & Friedman, P.C., St. Louis, for plaintiff-respondent.

JEAN C. HAMILTON, Special Judge.

Respondent Arthur Brotherton brought suit for damages in the Circuit Court of the City of St. Louis pursuant to the Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq., against appellant Burlington Northern Railroad Company (Burlington). He claimed to have sustained injury while working as a carman for Burlington. The jury returned a verdict in Brotherton's favor for $150,000.00 and judgment was entered on the verdict.

On appeal, Burlington asserts the trial court erred in: (1) denying Burlington's motion for mistrial because respondent was not required to furnish copies of medical records to appellant; (2) admitting allegedly speculative testimony from respondent's treating physician; (3) refusing to submit to the jury a "present value" instruction; (4) failing to grant a new trial following certain comments by respondent's attorney upon defendant's corporate status and upon the burden of proof with respect to contributory negligence; (5) overruling Burlington's objection to respondent's use, during closing argument, of two exhibits not formally admitted into evidence; and (6) failing to grant a new trial or to order a remittitur by reason of excessive damages.

We believe that none of these points of error requires reversal of the judgment and, accordingly, we affirm.

Arthur Brotherton, an employee of Burlington for twenty-six years at the time of his injury, was a journeyman carman. A carman is a mechanic who repairs railroad

freight cars including their braking mechanism.

The braking mechanism of a freight car is composed of the brakeshoe key, the brakehead and the brakeshoe. The brakeshoe key is a piece of metal running through the brakehead. The brakeshoe fits into the brakehead. When the key is pulled out, the brakehead and brakeshoe can be separated. When a brakeshoe has been used for a long time, the heat generated from that use may cause the brakeshoe to melt into the brakehead, preventing removal of the key and separation of the brakeshoe from the brakehead. To separate the latter two parts when melting occurs, a carman may have to cut the brakeshoe away from the brakehead with a cutting torch. To perform this cutting operation, a carman must crawl under the axle of the railroad car and lay on his side to reach the braking mechanism. The actual cutting with a torch creates sparks from the fire and falling fragments of hot metal.

Shortly past noon, on April 29, 1978, while inspecting a boxcar, Brotherton observed a brakeshoe in need of repair. Unable to remove the brakeshoe key, he had to cut the brakeshoe with a cutting torch. Brotherton positioned himself under the boxcar, on his right side, his left ear facing upward. His ears were unprotected. While cutting the brakeshoe, a piece of hot metal fell into his left ear, causing severe pain.

The following day, still experiencing pain in and drainage from his left ear, Brotherton went to Sparks Hospital with his foreman. The pain continued and, two days later, he consulted Edgar A. Gedosh, M.D. Brotherton continued to be treated by Dr. Gedosh until one year before the trial. He was also examined by Gershon J. Spector, M.D. on August 30, 1979, February 15, 1982, and September 9, 1982, and by George Katsantomis, M.D. on August 3, 1982.

According to the medical testimony, Brotherton suffered scarring in the ear canal, a perforated eardrum, burns in the lining of his middle ear and an obstruction on the Eustachian tube due to scarring.

Appellant's first point is that the trial court erroneously denied its motion for mistrial. Prior to trial, respondent was not required to furnish appellant with certain medical records and reports in response to an interrogatory and to a request for production of documents on the ground that these requests called for production of work product and privileged information obtained in anticipation of litigation and were, therefore, outside the scope of permissible inquiry under the Missouri Rules of Civil Procedure. During presentation of respondent's case-in-chief, Burlington moved for a mistrial, or in the alternative, to exclude the testimony of Dr. Spector regarding any examination he made of Brotherton other than the one on August 30, 1979, for which records had been provided. It argued that the trial court's earlier ruling prevented it from obtaining copies of respondent's medical records other than Dr. Spector's examination of August 30, 1979. Lacking complete medical information, Burlington claimed prejudice by reason of its inability to prepare adequately for trial and claimed surprise with respect to the extent of respondent's injuries.

We find the trial court committed no error. The record reflects that respondent, at the time of his deposition, furnished all medical records in his possession to appellant and disclosed the date on which he was last examined by Dr. Spector. He also provided signed medical authorizations which appellant used to obtain medical records on two occasions. Appellant was able, therefore, either to depose Dr. Spector or to obtain relevant medical records from him through use of a medical authorization signed by Brotherton. It was not respondent's duty to furnish appellant with records solely in the possession of a third party where those records were equally available to both litigants from that third party. See *School Dist. of Springfield R–12 v. Transamerica Ins. Co.*, 633 S.W.2d 238, 248 (Mo.App.1982).

■ Moreover, appellant's claim of surprise concerning the extent of respondent's injuries is not supported by the record before this Court. The opening statement of appellant's counsel disclosed appellant's awareness of injuries more extensive than simply perforation of the eardrum. In particular, it knew from Dr. Gedosh's deposition of alleged injury to the Eustachian tube. Having, therefore, failed to demonstrate either prejudice or surprise, appellant's first point is denied.

■ In its second point, appellant objects to the admissibility of certain statements of Dr. Gedosh who testified by deposition. Appellant contends they constituted speculation as to Brotherton's physical condition in the future. We disagree.

The responses to which objection is made relate to the advisability of a tympanoplasty for the respondent and, specifically, to the advisability of such surgery with respect to the condition of the Eustachian tube. Dr. Gedosh did not diagnose the future condition of respondent's Eustachian tube. He merely indicated that a tympanoplasty would not adequately correct injury to the tympanic membrane so long as the Eustachian tube was functioning improperly. Accordingly, before recommending such surgery to respondent, Dr. Gedosh "would have to follow him for quite a while to see what the function of the Eustachian tube would be ...."

Coupled with the unequivocal testimony of Dr. Spector that respondent's Eustachian tube was damaged and did not function, the comments of Dr. Gedosh were not speculative. Dr. Gedosh's testimony was admissible because it was related to correction of a condition, perforation of the tympanic membrane, caused by respondent's accident. Moreover, it was supported by the detailed objective findings of Dr. Spector. When such evidence is considered "in entirety, rather than in isolated bits," it cannot be considered speculative. *Stephens v. Guffey*, 409 S.W.2d 62, 70 (Mo. 1966). Appellant's second point is denied.

■ Burlington's third point is that the trial judge erred in refusing to submit to the jury a "present value" instruction. This issue has previously been addressed by the Missouri Supreme Court which held that such an instruction was not appropriate under MAI. *Bair v. St. Louis-San Francisco Ry. Co.*, 647 S.W.2d 507, 510 (Mo. banc 1983); *Dunn v. St. Louis-San Francisco Ry. Co.*, 621 S.W.2d 245, 253 (Mo. banc 1981). The third point is denied.

■ Appellant's fourth point concerns comments made by counsel for respondent during closing argument. First, it alleges error with respect to a comparison by respondent's counsel between the relative status of the appellant as a corporation and the individual status of respondent. Specifically, respondent was characterized as a "working man" and appellant as "this corporation", "this railroad" and "this corporation railroad." In addition, respondent's counsel stated that Congress enacted the Federal Employer's Liability Act to "put some fellow citizens, jurors, between you and this railroad." Appellant concedes that no objection was made to these statements and that this point of error was not preserved in its motion for new trial. It contends, however, that the statements constituted plain error, requiring a new trial. Rule 84.13(c). We disagree.

Appellant asserts that the allegedly objectionable statements were made repeatedly during respondent's closing argument. No objection was made, however, to any one of those statements. Nor was the issue presented to the trial court in the motion for new trial as required by Rule 78.07 and Rule 84.13(a). Plain error has not been demonstrated and, therefore, the general rule applies that

> when counsel does not object to argument he deems improper, he may not thereafter object upon review .... The [plain error] rule may not be invoked as an excuse for mere failure to timely and properly object or to evade the primary responsibility of orderly presentation to the trial court in the first instance.

*Birmingham v. Coen,* 320 S.W.2d 509, 510 (Mo.1959); *Hensic v. Afshari Enterprises, Inc.,* 599 S.W.2d 522, 525 (Mo.App.1980).

Next, appellant asserts that the trial court erred in overruling its objections to remarks by respondent's counsel concerning contributory negligence. In closing argument, he stated the following:

> You've heard Mr. Rothmann's assessment of the evidence in this case. He has told you that Art Brotherton was contributorily negligent. The Court has instructed you in Instruction No. 4, that the burden of causing you to believe a proposition of fact is upon the party whose claim depends on that proposition. That means the burden is upon the railroad to bring in evidence. And the Court has instructed in determining whether or not you believe any such proposition you must consider only the evidence and the reasonable inferences.

Appellant's objection that the defense does not have to bring in evidence was overruled by the trial court.

In the context of respondent's argument, quoted above, the Court's ruling was not improper. Counsel for respondent accurately paraphrased Instruction No. 4 (MAI 3.01) which admonished the jury to "consider only the evidence and the reasonable inferences derived from the evidence" and which defined the burden of proof of a party presenting a proposition of fact. One who asserts the defense of contributory negligence does have the burden of proving that the plaintiff did not act with care of an ordinarily prudent person under the same or similar circumstances. *Shute v. Prom Motor Hotel, Inc.,* 446 S.W.2d 137, 142 (Mo.App.1969). This may be accomplished through evidence adduced on cross-examination during plaintiff's case or during the defendant's case. Evidence presented in plaintiff's direct case may discharge the defendant's burden, but that was not the situation here. Respondent's direct evidence did not demonstrate contributory negligence and the burden to present such evidence remained with the appellant.

Appellant next objects to the use of two photographs, Exhibits 19 and 20, which were marked but not formally introduced into evidence. Both exhibits were identified and described by respondent's witness, Dr. Gershon Spector. No objection was made to either exhibit until the close of the instruction conference, prior to closing argument. Appellant's counsel then objected, not to their relevancy or probative value, but to their use by respondent's counsel during closing argument. The objection was properly overruled by the trial judge. Once marked and used, an exhibit is in evidence as though it had been formally introduced. *Wilkins v. Cash Register Service Co.,* 518 S.W.2d 736, 751 (Mo. App.1975); *Bolhofner v. Jones,* 482 S.W.2d 80, 85 (Mo.App.1972). This contention is without merit.

Finally, appellant contends the trial court erred in refusing to grant a new trial because the verdict was so excessive as to be the "obvious result of passion and prejudice on the part of the jury ...." In reviewing an allegedly excessive verdict, an appellate court may consider only evidence which supports the verdict, not that which disaffirms it. *Wright v. Fox-Stanley Photo Products,* 639 S.W.2d 407, 410 (Mo.App. 1982).

Evidence favorable to this verdict showed that respondent was 57 years old at the time of his injury. When the hot metal fell into his ear, he experienced severe pain for several days, as well as swelling in and drainage from his ear. The pain, a constant ache, and drainage continued to the time of trial. Wind or water in his ear caused infection, requiring medical attention. Medical evidence indicated a significant hearing loss due to the injury, no Eustachian tube function and scarring of the lining of the ear and the canal, including damage to the nerve. The prognosis for respondent is poor. A hearing aid is ineffective. Surgery is unlikely to correct his impairment and the risk of surgical complication is high. Future surgery is probable, however, to remove infection and

to provide adequate drainage, although not to rebuild hearing.

■ To establish bias or prejudice of the jury which results in an excessive verdict, appellant must rely upon more than the size of the verdict; it must point to trial error. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 615 (Mo. banc 1977). Appellant relies in this case upon the "cumulative nature" of all trial errors raised in its brief as well as the verdict of $150,000.00 to demonstrate such bias and prejudice. We disagree.

■ The allegations of trial error reviewed by this Court and upon which appellant relies are without merit. They relate to the admission or exclusion of evidence, to the failure to give a requested instruction and to comments of counsel during closing argument. Such allegations, even if true, are insufficient to establish passion or prejudice on the part of the jury. *Brazell v. St. Louis Southwestern Ry. Co.,* 632 S.W.2d 277, 290 (Mo.App.1982). Considered separately or collectively, these alleged errors, coupled with the amount of the verdict, do not require a new trial.

■ Appellant further suggests a remittitur of $75,000.00. The point as stated presents nothing for appellate review. *Dunn v. St. Louis-San Francisco Ry. Co.,* 621 S.W.2d 245, 256 (Mo. banc 1981).

Judgment affirmed.

GAERTNER, P.J., and SMITH, J., concur.