Gaetana SANSONE, Appellant,

v.

Alan LONDE, M.D., Respondent.

No. 53191.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 12, 1988.

Dale F. Myers, St. Louis, for appellant.

Burton Shostak, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Plaintiff appeals from an adverse judgment in her medical malpractice action against respondent. We affirm.

In 1977, Dr. Londe, a general surgeon, performed elective mammoplasty surgery on plaintiff by inserting silicon implants under her breasts. The precise consequences of this procedure are disputed, but both parties agree that plaintiff suffered extraordinarily severe complications. Dr. Londe performed a second operation on plaintiff and a Dr. Corwin conducted nine additional operations, but plaintiff's breasts are presently and will probably remain disfigured.

In 1980, plaintiff filed a suit against Dr. Londe alleging medical malpractice in that Dr. Londe: (1) failed to inform her of possible complications; (2) failed to properly treat the infections and hematoma that followed surgery; (3) improperly inserted the breast implants; (4) used implants that were too large. The case was submitted to the jury solely on the issue of informed consent. The jury returned a verdict for defendant and plaintiff appeals.

On appeal plaintiff charges trial court error in permitting her to be cross-examined concerning the termination of a pregnancy and in failing to instruct the jury to disregard this cross-examination. Additionally, plaintiff complains of the trial judge's instruction to her trial counsel[1] not to comment on this evidence in his argument to the jury.

During cross-examination, defendant's attorney questioned plaintiff as follows:

Q: Did you ever have a pregnancy terminated?

A: No, I did not.

Q: Have you been treated by Dr. Gall, a gynecologist?

A: He was, he's not anymore. He was.

Q: Reproductive health service in January, 1981?

A: Not that I remember.

Q: You don't recall being there on that date?

A: For treatment by them?

Q: For anything?

A: No.

Plaintiff's counsel did not object and the matter was not asserted in plaintiff's Motion for New Trial.

Subsequently, defendant's attorney informed the court in chambers that he intended to introduce Reproductive Health Services records showing that plaintiff did have an abortion in 1981. Counsel stated he was offering this evidence to rebut plaintiff's claim that she no longer dated because of her deformity. Plaintiff's trial counsel objected, arguing the issue of an abortion was collateral and that defendant was bound by plaintiff's denial. The trial court accepted the latter argument and excluded the tendered evidence. Defendant's attorney then requested the court to instruct plaintiff's trial counsel to omit any mention of the failure to produce records of Reproductive Health Services from his final argument. Plaintiff's attorney agreed that he would make no such argument. The trial court then instructed counsel to avoid the subject completely: "I'll not let you get up and argue the Reproductive Health thing, so that we don't have anything about muddying the water, that kind of argument." The chambers conference concluded with the following colloquy between the court and plaintiff's trial counsel.

Mr. Herd: If I understand you and please correct me if I am wrong. You are sustaining Mr. Shostak's motion, and I am instructed to make no comment on his failure to produce records and further instructed by the court to make no argument whatsoever about testimony. You are [not] admitting the record concerning termination of pregnancy?

■ Plaintiff's counsel on appeal now argues the trial court initially erred in permitting the cross-examination. Having failed to object to the questioning, plaintiff may not make her initial complaint about the

---

1. Plaintiff's appellate counsel is not the same as    her trial counsel.

testimony on appeal. *Henley v. Continental Cablevision,* 692 S.W.2d 825, 826 n. 1 (Mo.App.1985); Rule 84.13(a). We refuse to invoke the plain error rule to remedy the mere failure to timely and properly object. *Goodman v. Firmin Desloge Hospital,* 540 S.W.2d 907, 917 (Mo.App.1976).

■ Plaintiff also claims the court erred by preventing her trial counsel from commenting on the abortion issue during closing argument. A party may not argue his opponents failure to produce evidence when he has induced the court to exclude that evidence. *Calvin v. Jewish Hosp. of St. Louis,* 746 S.W.2d 602 605 (Mo.App.1988); *State v. Luleff,* 729 S.W.2d 530, 536 (Mo. App.1987). Counsel on appeal fails to identify any possible argument that would not have amounted to such an impermissible comment. He merely states that by limiting the argument, the jury heard only one side of the story. That side of the story, however, consisted of plaintiff's unequivocal denial of a terminated pregnancy. Because of the preclusion from commenting upon defendant's failure to produce supporting documentation, we perceive no prejudice to plaintiff from the order restricting final argument.

■ Moreover, we find no abuse of the broad discretion vested in the trial court to control the scope of final argument. The trial court rejected defendant's contention that the evidence of an abortion was relevant to the issue of damages and accepted plaintiff's argument that such evidence was purely collateral. Having successfully urged this position upon the trial court, plaintiff may not be heard on appeal to accuse the trial court of abusing its discretion by precluding a "muddying of the waters" through argument of irrelevant, collateral issues. A party may not complain on appeal of a procedure adopted by the trial court at his own request or of alleged error in which, by his own conduct at trial, he joined or acquiesced. *Hilton v. Crouch,* 627 S.W.2d 99, 102 (Mo.App.1982).

Plaintiff's final point on appeal relates to the trial court's response to a jury request for an exhibit during deliberations. It is appropriate to set forth the background surrounding this incident. Plaintiff testified she consulted Dr. Londe because he had performed breast surgery upon the friend of a friend. She thought he was a plastic surgeon, although he did not say he was a plastic surgeon. Neither did she inquire if he specialized in plastic surgery nor investigate his qualifications to perform plastic surgery. It is undisputed that a general surgeon is qualified to perform mammoplasty. Portions of Dr. Londe's deposition were read as admissions during plaintiff's case, including his testimony that he had never held himself out to be a plastic surgeon. At trial Dr. Londe testified that although he was "Board Certified" as a general surgeon rather than a plastic surgeon, he performed approximately 400 female breast augmentation surgical procedures each year. He considered the majority of his practice to be "cosmetic surgery."

On cross-examination, plaintiff confronted Dr. Londe with a book, identified as exhibit 18, published by Blue Cross–Blue Shield of Missouri. This book was identified as a roster of physicians who participated in the Individual Practice Program, a health care option. The exhibit listed Dr. Londe as a general surgeon with a sub-specialty of plastic surgery. Dr. Londe testified that he had never seen the book and was unaware of its existence. He admitted signing an agreement, identified as exhibit 25, authorizing publication of his participation in the plan, but denied authorizing the listing of his name as a plastic surgeon. The manager of the Blue Cross program testified in rebuttal that this Individual Practice Program did not come into existence until 1981, four years after Dr. Londe operated on plaintiff. Dr. Londe signed the agreement to participate in the program in 1982. The agreement itself, exhibit 25, does not contain any instruction from Dr. Londe to Blue Cross–Blue Shield to list him as a specialist, only as a "referral physician". The references to specialty and sub-specialty were put in by the Blue Cross–Blue Shield office personnel. Although marked for identification, neither

exhibit 18 nor 25 was formally offered or admitted into evidence.

During their deliberations the jury sent a note to the court requesting both the written form signed by plaintiff listing the possible complications of the surgery and the Blue Cross–Blue Shield physician book. In response the trial court sent the following message to the jury:

(1) attached is Dr. Londe's risk form

(2) Blue Cross–Blue Shield Doctors reference book is not in evidence.

Over the strenuous objection of plaintiff's trial counsel the risk form was sent to the jury but the Blue Cross–Blue Shield book was withheld. After furnishing the court with citations of authority, plaintiff's attorney persuaded the trial judge to change his ruling. About thirty minutes later, the pertinent pages of the reference book were copied and sent to the jury with the following note: "the exhibit you previously requested is attached hereto." Plaintiff's attorney stated "I have no objection." Defendant's attorney voiced a vigorous objection which was overruled. Plaintiff's attorney then stated

Judge, I think the appropriate language for the exhibit which was previously requested and the attachment, that it may be more accurate to say that it is in evidence and so is the attachment. I leave that up to the court.

With no further comment, request, or statement, the above quoted note with the attached document was delivered to the jury. Now plaintiff complains of the trial court's failure to explicitly instruct the jury that exhibit 18 was in evidence.

■ In originally telling the jury that exhibit 18 was not in evidence the trial court erred, legally and procedurally. As stated in *Brotherton v. Burlington Northern Railroad*, 672 S.W.2d 133, 138 (Mo. App.1984), once an exhibit has been marked and used, it is in evidence as though it had been formally introduced. Informing the jury that the exhibit was not in evidence could easily be construed by the jurors as a disparaging comment by the court upon the weight and sufficiency of the evidence offered as impeachment of Dr. Londe's credi-

bility. Any such comment by the court indicating an opinion upon the weight and sufficiency of evidence or the credibility of a witness is improper. *Nolting v. Petersen*, 404 S.W.2d 410, 414 (Mo.App.1966). It is seldom necessary to inform a jury of the reason underlying a trial judge's decision not to send exhibits to the jury room during deliberations. Moreover, the likelihood that any such explanation might convey to jurors an indication of the judges opinion renders such action extremely inadvisable.

Our determination that the trial court erred in handling the jury's request for exhibit 18 does not end our inquiry. The record clearly demonstrates that plaintiff acquiesced in the trial court's action, thereby waiving any complaint of error. We further find that under the facts and circumstances the matter does not rise to the level of manifest injustice or a miscarriage of justice warranting invocation of the plain error rule. Rule 84.13(c).

■ One purpose of requiring specific objections to trial court rulings in order to preserve error for appellate review is to permit the trial court to take corrective measures before the trial is concluded. That is exactly what occurred with regard to the initial mistake of telling the jury exhibit 18 was not in evidence. Trial counsel's timely objection, subsequently buttressed by citation to *Brotherton* and similar cases, was sustained and the court undertook to remedy the situation by forwarding copies of the pertinent parts of the exhibit to the jury. When first shown the note the court proposed to send to the jury, counsel stated "I have no objection." Later he suggested different wording of the note but concluded "I leave that up to the court." This not only falls short of constituting an objection to the court's action, it amounts to a positive acquiescence therein. A party may not even tacitly, much less expressly, acquiesce in the procedure proposed by the trial court and complain for the first time after an adverse result. *See Disbrow v. Boehmer*, 711 S.W.2d 917, 927 (Mo.App.1986); *Arkansas–Missouri Power Company v. Haines*, 592 S.W.2d 883, 885 (Mo.App.1980).

[6] Before us plaintiff has not requested that we review this issue as plain error and, because we do not believe the error materially affected the merits of the action, Rule 84.13(b) nor that it resulted in manifest injustice or a miscarriage of justice, Rule 84.13(c), we decline to do so sua sponte. The misdirection to the jury concerned the admission in evidence of exhibit 18, the Blue Cross–Blue Shield Book of Referral Physicians. The jury was fully informed by the testimony that the book characterized Dr. Londe as maintaining a sub-specialty of plastic surgery. Whether this characterization was accurate or not had no bearing whatsoever upon the issue submitted to the jury, i.e., failure to secure informed consent. Its relevance was limited to the issue of Dr. Londe's credibility in rebuttal of his deposition testimony that he had never held himself out to be a plastic surgeon. However, he conceded before the jury that the Blue Cross–Blue Shield book contained the sub specialty description; he merely claimed to be unaware of it. It is noteworthy that Dr. Francis Paletta, testifying as an expert witness for defendant, was also unaware of his own listing in the Blue Cross–Blue Shield book. The exhibit requested by the jury did nothing more than corroborate what Dr. Londe had admitted. If any confusion may have resulted from the court's initial withholding and subsequent forwarding of the exhibit to the jury, we are unable to perceive any significant impact such confusion could have had upon the jury's evaluation of Dr. Londe's credibility.

Judgment affirmed.

SATZ, C.J., and SIMEONE, Senior Judge, concur.