Charles D. HOUSE, Respondent/Cross–
Appellant,

v.

**MISSOURI PACIFIC RAILROAD
COMPANY, Appellant/Cross–
Respondent.**

No. 67993.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 9, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 15, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Michael D. O'Keefe, James W. Erwin, William D. Hakes, Thompson Cuburn, St. Louis, for appellant.

C. Marshall Friedman, Kenneth E. Rudd, C. Marshall Friedman, P.C., St. Louis, for respondent.

GERALD M. SMITH, Presiding Judge.

In this Federal Employers' Liability Act case the jury awarded plaintiff $2,700,000. The trial court granted defendant's motion for set-off of $46,444.61 for previously paid medical expenses, and a remittitur of $618,555.39, and entered a judgment for plaintiff of $2,035,000. Defendant appeals from that judgment; plaintiff cross-appeals the set-off. We affirm.

Defendant's first point on appeal is that the plaintiff failed to make a submissible case of defendant's negligence, because of the absence of evidence on which to premise foreseeability. Some review of the facts in the light favorable to the plaintiff is required.

As part of his duties for defendant plaintiff fueled diesel locomotives. The locomotives were moved onto a track with platforms in close proximity on each side. In order to insert the fuel nozzle into the locomotive fuel tank it was necessary to raise a "fuel gate" which was a hinged rectangular portion of the platform. Each fuel gate was three feet long and two feet wide and weighed approximately 135 pounds. To lift the fuel gate it was necessary for the fueler to either bend over or squat on the platform and lift the fuel gate to a perpendicular position where chains held it in place. When fueling was completed the fuel gate was pushed or kicked back to the horizontal position. Such action would result on occasions in the hinges of the fuel gate breaking or going out of alignment and this could result in the gates "binding" or "sticking".

On the date of the accident, plaintiff attempted to fuel a diesel engine. As he had

done many times before plaintiff squatted beside the gate and reached with his right hand to lift it up. As he pulled the gate up it became caught and stopped. Plaintiff's back then "popped" and he felt sharp pain.

Defendant focuses on the fact that no evidence established that this gate was defective and therefore contends it was not foreseeable that plaintiff would be injured by the defective gate. This misperceives plaintiff's theory, evidence and the law under FELA.

■ In an action brought under the Act, plaintiff is entitled to all favorable inferences from the evidence presented to the jury, and the case is submissible if there is any evidence to support the employer's negligence. *Zibung v. Union Pacific Railroad Co.*, 776 S.W.2d 4 (Mo.banc 1989)[1]. To establish defendant's negligence, the risk posed by its act or omission must have been foreseeable. *See Chemical Design, Inc. v. American Standard, Inc.*, 847 S.W.2d 488 (Mo.App.1993)[1–3]. However, the particular injury or the exact manner of injury that resulted from defendant's negligence need not have been foreseeable. *Kramer v. Chase Resorts, Inc.*, 777 S.W.2d 647 (Mo.App.1989)[4,5]. All that is required is that the employer knew or should have known that its standard of conduct is inadequate to protect its employees from injury, and that a general danger is present. *Hertzler v. Burlington Northern Railroad Company*, 720 S.W.2d 762 (Mo. App.1986)[2,3].

■ Plaintiff presented substantial evidence that the weight of the gates, the awkward position required to lift them, and the tendency of the gates to "catch" or "hang-up" made them dangerous to employees required to fuel diesel engines. There was testimony that at an earlier time special tools were furnished enabling the employees to raise the gates from a standing position but that such tools were not available when plaintiff sustained his injury. There was testimony that the dangerous condition was raised frequently by employees at safety meetings and was known to supervisors. There was testimony that the position required of employees to lift the fuel gates was contrary to the defendant's own standards concerning lifting. It was not necessary that the plaintiff establish that the particular gate involved was defective or that defendant had knowledge of a defect in that gate. Plaintiff produced sufficient evidence that the condition of the gates was generally dangerous and that defendant was negligent in failing to take curative measures to prevent injury to employees subjected to the dangerous condition.

■ Defendant next contends that the trial court erred in excluding evidence from the deposition of a treating psychologist that the railroad offered to enroll plaintiff in a wage continuation program and that plaintiff refused. This refusal, defendant contends, represented a failure to mitigate damages, notably the depression plaintiff suffered, in part because of financial stress.

■ A trial court has considerable discretion in the exclusion of evidence and, absent abuse of discretion, its action will not be grounds for reversal. *Kelly by Kelly v. Jackson*, 798 S.W.2d 699 (Mo.banc 1990)[8,9]. Such abuse occurs only when the ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration. *McClain v. Petkovich*, 848 S.W.2d 33 (Mo.App.1993)[4,5].

The testimony of the one witness was vague and uncertain and it is not clear what precisely the wage continuation offer made to the plaintiff was. The offer was made long after the commencement of plaintiff's depression and the evidence does not establish that acceptance of the offer would have in fact reduced plaintiff's depression, which had its origins in pain and inability to work. Evidence of the "wage continuation" offer also implicated settlement negotiations between the parties and the existence of collateral source payments from railroad disability. It further injected a collateral issue into the case which presumably would have opened the door for rebuttal evidence by plaintiff as to the considerations for not accepting the wage continuation offer. Under the circumstances of this case we cannot find an abuse of discretion by the trial court in refusing admission of the testimony.

■ A similar situation exists as to defendant's next contention that it should have been permitted to introduce evidence of a paternity action against plaintiff which established his obligation for child support. Defendant contends such evidence should have been admitted because plaintiff stressed in his evidence the effect his injuries had on the close relationship with his daughters and his ability to care for them and the increased depression he suffered as a result. The refused evidence would, defendant contends, have cast doubt on that testimony.

The correlation between the refused evidence and the reason for it being offered is tenuous at best. The daughters were living with the plaintiff and it is questionable that an earlier judgment of paternity and support would indicate the level of relationship and devotion between the father and his daughters after his injury. We find no abuse of discretion in the trial court refusing to admit this collateral evidence.

■ The defendant next premises error on a trial court ruling preventing defendant from arguing about plaintiff's failure to prove that a report was falsified as plaintiff had asserted in opening statement. After plaintiff's injury an inspection of the fuel gate where plaintiff was injured was made and a report signed by two people reported no defects. In the opening statement plaintiff's counsel stated that one of the persons signing the inspection report would testify that it was false. After voir dire of the witness the defendant moved to have any evidence of falsity of the report excluded. This motion was granted and the jury was given a withdrawal instruction instructing it to disregard the statement of plaintiff's counsel during opening statement about an allegedly false inspection report. In argument defendant's counsel sought to point out that plaintiff had adduced no evidence of the falsity of the inspection report. Plaintiff's objection to that argument was sustained. We find no error. The defendant objected to the eliciting of testimony concerning the falsity of the report and the court sustained that objection. It is well-established that a party may not argue his opponent's failure to produce evidence when he has induced the court to exclude that evidence. *Sansone v. Londe,* 753 S.W.2d 339 (Mo.App.1988)[2]; *Delaporte v. Robey Building Supply, Inc.,* 812 S.W.2d 526 (Mo.App.1991)[17–19].

Defendant next premises error on the trial court's failure to make detailed findings on the *Batson*[1] motion of defendant. Plaintiff utilized his peremptory strikes to remove white veniremen from the panel resulting in a jury of 11 African–Americans and 1 Caucasian. Plaintiff is African–American. Defendant's motion at the time of the strikes was denied by the trial court on the basis that because defendant was a corporation it had neither race nor gender and could not raise the issue. After the filing of defendant's motion for new trial the court reversed that position and acknowledged that under *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) and *State v. Parker,* 836 S.W.2d 930 (Mo.banc 1992)[3–6] any party may invoke a *Batson* claim. Defendant contends that the trial court failed to make findings of fact or detailed explanation on the record of the court's basis for determining there was not purposeful discrimination in the selection of the jury. It also contends that the reasons given by the plaintiff to justify his strikes were pretextual.

■ In asserting that the trial court was required to make findings of fact or detailed explanation on the record for the court's ruling defendant relies on *State v. Jackson,* 746 S.W.2d 429 (Mo.App.1988). That case, decided early in the development of *Batson* jurisprudence, relied in turn on *State v. Antwine,* 743 S.W.2d 51 (Mo.banc 1987) as implicitly requiring such specificity in order to afford adequate review on appeal. In *State v. Parker,* 836 S.W.2d 930 (Mo.banc 1992) the court revisited *Antwine* and modified the procedures to be followed where *Batson* challenges are made. *Parker* remains the definitive statement of Missouri procedure in *Batson* cases. It does not require the making of findings of fact or detailed explanation for the court's ruling as required by *Jackson.* While it is extremely beneficial to an appellate court to have findings or explanations for

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.    1712, 90 L.Ed.2d 69 (1986).

542

the court's ruling we are unable to conclude that the failure to make such findings or explanations is error or requires a remand.

Here the court stated that while it found the "plaintiff's use of peremptory strikes to be curious and inconsistent at times, it does not rise to purposeful discrimination". We vest considerable discretion in trial judges to determine whether a party has been guilty of purposeful discrimination in utilization of its peremptory challenges. Plaintiff's counsel at the *Batson* hearing on the motion for new trial gave lengthy explanations for each of his strikes. As to each of the stricken veniremen he gave a number of matters he had considered in exercising his strikes as to each venireman. The underlying theme but not exclusive reason, was to eliminate young single men without children whom he believed would be less sympathetic to the damage sustained by plaintiff in his relationship with his children. There were more young single men without children on the venire than plaintiff had strikes. He utilized his strikes to eliminate those in that group that he considered to have the greatest anti-plaintiff baggage. It was therefore inevitable that some of the jurors stricken would be similarly situated to some not stricken as to certain characteristics. We are unable to conclude that any stricken venireman was so similarly situated to a venireman not stricken that the only explanation for the strike was purposeful discrimination. For example, we do not find it unreasonable for counsel to believe that a young single male working in the computer industry might be less family sympathetic than a young single male who was a social worker. On the record before us we cannot conclude that the trial court abused its discretion in denying defendant's *Batson* motion.

On his cross-appeal plaintiff asserts that the trial court erred in setting-off the medical expenses paid by the defendant. § 490.710 provides specifically for such a set-off. Plaintiff contends that because he did not produce evidence of the medical expenses and did not ask for them the jury did not award any amount for medical expense and he does not gain a double recovery if set-off is not given. He relies on *Derossett v. Alton*

*and Southern Railway Company*, 850 S.W.2d 109 (Mo.App.1993). There the jury was specifically advised by stipulation that someone other than the plaintiff had paid the expenses and plaintiff was not entitled to such expenses. Under § 490.715 that stipulation waived defendant's right to set off under § 490.710. The jury here was not similarly informed and the verdict returned was general, so the verdict does not identify what the jury considered in awarding damages. In that situation the trial court correctly followed the mandate of the statute in setting off the medical expenses paid by the defendant.

Judgment affirmed.

GARY M. GAERTNER and RHODES RUSSELL, JJ., concur.